R. G. BARRY CORPORATION,
Plaintiff-Appellant,

v.

MUSHROOM MAKERS,
INCORPORATED,
Defendant-Appellee.

No. 193, Docket 79–7303.

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1979.

Decided Dec. 11, 1979.

Walter D. Ames, Washington, D. C., Watson, Cole, Grindle & Watson and Henry B. Roth, New York City, Herzfeld & Rubin, New York City, for plaintiff-appellant.

Leslie D. Taggart, New York City, Watson, Leavenworth, Kelton & Taggart, New York City, for defendant-appellee.

Before KAUFMAN, Chief Judge, SMITH and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In the early days of the Republic, it was perceived that a risk of litigation by a citizen of one state against a citizen of another state was such that the local prejudice of the litigating forum would prevail. Accordingly, since as far back as 1789, Congress has permitted out-of-state defendants sued in state courts to remove actions brought against them to a federal forum for adjudication on the merits.[1] This fear of parochial bias supplied the principal impetus for removal petitions until 1887, when Congress drastically expanded the grounds for removal to include all actions over which federal courts could otherwise exercise original jurisdiction.[2] Now, as then, a defendant sued in state court may remove the action to federal court if the complaint states a claim within the federal court's original jurisdiction, or if the defendant is a citizen of a state other than the forum. In the present case, we must determine whether either of these predicates for removal jurisdiction exists.

## I.

R. G. Barry Corporation manufactures and sells women's footwear under the registered trademark MUSHROOMS. In a related but separate market, Mushroom Makers, Inc., employs the MUSHROOM mark to promote and sell its line of women's sportswear, including jeans, skirts, and jackets. Following two unsuccessful attempts to register the MUSHROOM mark with the United States Patent and Trademark Office, Mushroom Makers filed suit in the Southern District of New York seeking a declaration that its use of the symbol did not infringe Barry's rights under the Lanham Act, 15 U.S.C. § 1114. After issue was joined with the filing of a counterclaim by Barry, alleging trademark infringement, unfair competition, and false designation, a trial ensued before Judge Weinfeld.

Nearly three months after trial, but before a decision had been rendered, Barry moved to amend its answer to aver an additional counterclaim against Mushroom Makers based on its alleged violation of the New York anti-dilution statute, N.Y.Gen.

[1]. Judiciary Act of 1789, ch. 20 § 12, 1 Stat. 73, 79.

[2]. Judiciary Act of 1887, ch. 373, § 2, 24 Stat. 552, 553, *as corrected* 25 Stat. 433, 434–35.

Bus.Law § 368–d (McKinney 1968). Barry attempted to justify its belated application on the ground that, shortly beforehand, the New York Court of Appeals had worked a significant change in the State's law of trademark dilution by interpreting § 368–d to create a cause of action to enjoin another's use of a strong distinctive mark, even where there is no likelihood of confusion. *See Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). Judge Weinfeld denied Barry's motion, however, and subsequently found minimal likelihood of consumer confusion over the two marks, as well as insufficient injury to Barry to warrant an injunction against Mushroom Makers's continued use of the MUSHROOM mark. *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 441 F.Supp. 1220 (S.D.N.Y.1977), *aff'd* 580 F.2d 44 (2d Cir. 1978),[3] *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

Three weeks after Judge Weinfeld filed his opinion, Barry commenced the present action in New York Supreme Court restricted to a single claim for violation of § 368–d. Soon thereafter, Mushroom Makers removed the case to federal district court pursuant to 28 U.S.C. § 1441(b).[4] Barry, in turn, moved to remand the action to the state court, arguing that Mushroom Makers was a citizen of New York and therefore without right to remove under § 1441(b). Mushroom Makers countered by asserting that it was a citizen of Mississippi, not New York, and that Barry's complaint raised a federal question under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, over which the district court had original jurisdiction. *See* 28 U.S.C. § 1338(a).[5]

After reviewing testimony of Mushroom Makers's officers, both at the earlier trial and in subsequent depositions, Judge Cannella stated that he was "not persuaded that [Mushroom Makers], a Mississippi corporation, [could] be deemed a citizen of New York for purposes of diversity jurisdiction," and denied Barry's motion to remand. Subsequently, the district court judge granted Mushroom Makers's motion for summary judgment and dismissed Barry's complaint holding that Judge Weinfeld's earlier decision presented a complete bar to Barry's second action under the principles of *res judicata* and *stare decisis.* Barry appealed from the denial of its motion to remand to State court, and the dismissal of its complaint by summary judgment. On appeal, it has presented only the jurisdictional question. Because we believe the present action should not have been removed to the district court, we reverse the denial of Barry's motion to remand, vacate the judgment entered in the district court, and order the cause remanded to the New York Supreme Court. 28 U.S.C. § 1447(c).

## II.

Section 1441(b) of Title 28 provides that a civil action initially brought in a state court may be removed to a federal district court only if the cause of action is founded on a claim or right arising under federal law or, in any other action, "only if none of the parties . . . served as defendants is a citizen of the State in which such action is brought." In denying Barry's motion to

---

**3.** In affirming the district court's decision, this Court also upheld its denial of leave to amend Barry's answer to state an additional claim under § 368–d. In the panel's view, the elements of a § 368–d cause of action were well-established prior to *Allied Maintenance* and therefore could have been set out in Barry's original pleading. *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

**4.** Section 1441(b) reads:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**5.** Section 1338(a) reads, in relevant part:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks.

remand the present action to state court, Judge Cannella apparently did not consider whether the complaint raised a federal question, but rather rested his decision simply on the ground that Mushroom Makers was not a citizen of New York.

### A.

█ It is clear that for purposes both of diversity jurisdiction under 28 U.S.C. § 1332 and removal jurisdiction under 28 U.S.C. § 1441, a corporation is deemed to be a citizen of the state in which it is incorporated, and of the state where its principal place of business is located. 28 U.S.C. § 1332(c). It is a notable sidelight that, historically, such dual citizenship for corporate entities has not always been the rule. In the first case to construe the jurisdictional question of a corporation's citizenship, the Supreme Court stated that only natural persons could be deemed "citizens" for diversity purposes. *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809). Consequently, for years diversity jurisdiction depended on the citizenship of a corporation's shareholders, and not the location of the business enterprise or its state of incorporation. In *Louisville C. & C. R. R. v. Letson*, 43 U.S. (2 How.) 497, 11 L.Ed. 353 (1844), however, the Court began to retreat from *Deveaux*. *Letson* held that a corporation may be considered a "person" and thus a citizen of the state in which it is incorporated. Thus, corporate citizenship could be found in the state of incorporation as well as each state in which the corporation's shareholders were citizens. Later, the Court confined the situs of corporate citizenship solely to the state of incorporation in *Marshall v. Baltimore & Ohio R. R.*, 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1853), by holding that a corporation's shareholders are conclusively presumed to be citizens of

the state in which the business is incorporated. *See also St. Louis & S. F. Ry. v. James*, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802 (1896).

It is against this backdrop that Congress amended 28 U.S.C. § 1332 [6] in 1958 to treat corporations as citizens, both of the state of their incorporation and of the state in which their principal place of business is located. The purpose of the amendment, according to the Report of the Senate Committee on the Judiciary, was to eradicate "the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another state." S.Rep.No.1830, 85th Cong., 2d Sess. 4 (1958), U.S.Code Cong. & Admin. News 1958, pp. 3099, 3101–3102. Since the underlying reason for diversity jurisdiction is to protect out-of-state litigants from assumed local prejudices, Congress could perceive no reason to open the federal forum to an essentially local enterprise. Moreover, it was considered unfair to permit a corporation to avoid trial in the court of a state where it transacts its principal business by means of a legal device not available to an individual citizen. *Id.*

Thus, in an effort to conform diversity citizenship with business reality, Congress selected as one test of a corporation's citizenship its principal place of business, a standard previously used under the old Bankruptcy Act, 11 U.S.C. § 11 (1958). In turning to the bankruptcy standard, however, Congress apparently disregarded the great difficulty courts had encountered in applying the test to corporations with multistate operations.[7] Nonetheless, as more courts began to address the question, two consistent lines of authority emerged con-

---

**6.** Congress amended § 1332 by adding, in part, a new subdivision (c), which reads:

For the purposes of this section and Section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

**7.** Due to their lack of a coherent analysis of the problem, bankruptcy precedents offered diversity courts little guidance other than a consistent emphasis upon the distinguishing facts of each case. *See Moesser v. Crucible Steel Co. of America*, 173 F.Supp. 953 (W.D.Pa.1959); *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959). *See also* Note, 47 Iowa L.Rev. 1151 (1962).

cerning the significance to be accorded different aspects of corporate activity.

Where corporate operations are spread across numerous states, courts have tended to emphasize those factors that identify the place where overall corporate policy originates. Thus, in an apt metaphor originated by Judge Weinfeld, the principal place of business of a far-flung corporate enterprise is "the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y.1959). In *Scot,* the defendant sought to remove an action brought in a New York State court on the ground that it was a citizen of Connecticut. Although Underwood's largest production plant, greatest number of employees, and principal assets were all located in Connecticut, Judge Weinfeld noted that it was as much a seller as a manufacturer of typewriters, and that its greatest volume of sales occurred in California and New York. Moreover, its executive offices were located in New York, where major policy decisions were made affecting every aspect of the company's operations. Because the New York office alone performed functions encompassing the totality of Underwood's manufacturing and sales activities, the court concluded it served as the "nerve center" and principal place of business.

When, however, corporate operations are centralized, courts have tended to deemphasize the concentration on the corporate "nerve center" and to focus instead upon the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public. For example, in *Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490 (S.D.N.Y. 1963), a corporation chartered and headquartered in Ohio was found also to be a citizen of New York, because its principal operations were all conducted there. The corporation served as a sales subsidiary of a manufacturing firm based in Ohio. Its corporate officers were all located in Ohio,

where they also managed the parent's other subsidiaries. Although Inland's activities were directed from Ohio, most of its employees and two-thirds of its sales were centered in New York. In addition, the New York office prepared the company's financial statements and formulated its credit and advertising policies. *Id.* at 491–92.

### B.

The evidence before Judge Cannella on Barry's motion to remand discloses a corporate organization strikingly similar to that presented in *Inland Rubber.* Yet, after reviewing the evidence, Judge Cannella simply stated he was "not persuaded" Mushroom Makers could be deemed a citizen of New York State for removal purposes.

Regardless of the record evidence supporting this conclusion, a preliminary question is presented concerning the proper allocation of the burden of proof on an application to remand. When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by "competent proof." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Jerro v. Home Lines, Inc.,* 377 F.Supp. 670 (S.D.N.Y.1974). Here, however, the inference is unavoidable that the district judge improperly placed the burden to rebut removal jurisdiction upon Barry, the party seeking remand. Ordinarily, such ambiguity in matters of proof necessitates a remand to the district court judge for further findings once the burden is properly allocated. But in this instance there is no need to send this action back to Judge Cannella because his decision rested upon the same documentary record now before us. *Dopp v. Franklin National Bank,* 461 F.2d 873, 879 (2d Cir. 1972). Since we are in as good a position as the district court to read and interpret the affidavits, depositions, and

prior trial testimony submitted by the parties, the time has come to put an end to what appears to resemble jurisdictional gamesmanship, a practice encouraged by the removal jurisdiction vested in the federal courts. Accordingly, we proceed to resolve the parties' last remaining federal dispute.

Our review of the record discloses an "affiliation"[8] between Mushroom Makers and a larger manufacturing and distribution company called Stevens Sportswear, Inc. Stevens, a holding company, maintains its corporate headquarters in Taylorsville, Mississippi, where many of its affiliates' operations are also centered. Within Stevens's organization, Mushroom Makers is a "selling"[9] corporation, whose principal functions are to design and market women's clothing under the MUSHROOM label. Both of these functions are performed exclusively by Mushroom Makers's president and sole full-time employee, Earl Sheldon, through its New York office. Not only does Sheldon develop each season's new line of clothing, but he initiates its advertising, and is responsible for its merchandising and sale. Ninety-five to ninety-nine percent of Mushroom Makers' sales are transacted through the New York office, and its accounts receivable are financed by a New York bank. Moreover, New York is the only state in which the company maintains a separate office, which is the only address the firm lists in its catalogues and advertisements.

In addition to Sheldon, Mushroom Makers's only other active employees are Anthony Greene and Richard Feinberg, both of whom work out of Stevens's Taylorsville, Mississippi office. Greene, Mushroom Makers's board chairman, manages the company's daily operations, including supervisory responsibility for shipping and administration. Feinberg, vice president for customer relations, is in charge of production planning and piece goods orders. Neither Greene nor Feinberg receive more than twenty per cent of their total compensation from Mushroom Makers, and both devote approximately fifty per cent of their time to its affairs. The remainder of their time is dedicated to Stevens's other affiliates. Furthermore, although the production, packaging, and shipping of Mushroom Makers's garments are performed in Mississippi, the work is done by employees of Taylorsville Manufacturing Company, another Stevens's affiliate, on contract from Mushroom Makers. All other corporate services performed in Mississippi, with the exception of the management activities of Greene and Feinberg, are similarly provided by Taylorsville Manufacturing on a contract basis.

■ In light of the foregoing, we conclude that Mushroom Makers must be deemed a citizen of New York, and therefore the removal of the present action to federal court on a claim of diverse citizenship was improper. Although the company's overall policies may be set in Mississippi and much of its administrative and manufacturing requirements contracted out to Mississippi firms, New York is the community in which Mushroom Makers engages in its most extensive contact with the public and the jurisdiction where it is least likely to suffer from "local prejudice," if, indeed, the "local prejudice" concept is not a relic of the past. It is in New York that its line of clothing is designed, the fabrics for its garments are selected and purchased, its finished product is advertised and sold, and its accounts receivable are financed. It is also the state in which the company maintains its only office and employs its sole full-time employee. Thus, although incorporated in Mississippi, its principal place of business and corporate citizenship is in New

8. As defined by Howard Feinberg, Mushroom Makers's former board chairman, "affiliate" corporations are commonly owned and managed by the same individuals. Feinberg Dep. at 10.

9. A "selling" corporation selects and purchases fabrics for shipment to a Stevens's manufacturing company which, in turn, produces finished garments to be marketed by the selling company. H. Feinberg Dep. at 6.

York.[10] 28 U.S.C. § 1332(c). *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490 (S.D.N.Y.1963); *Epstein v. Guilford Industries, Inc.*, 218 F.Supp. 286 (S.D.N.Y.1963); *Aron v. Indemnity Insurance Co.*, 200 F.Supp. 147 (N.D.Ill.1961). *See also* Pugh, *Federal Jurisdiction and Practice*, 36 N.Y.U.L.Rev. 142, 147 (1961). Consequently, Mushroom Makers may not remove the instant action to federal district court on a claim of diversity. 28 U.S.C. § 1441(b).

### III.

Regardless of its corporate citizenship, Mushroom Makers argues that removal may still be appropriate, because Barry's complaint states a cause of action within the district court's original jurisdiction under 28 U.S.C. § 1338(a). In support of this argument, Mushroom Makers cites *Beech-Nut, Inc. v. Warner-Lambert Co.*, 480 F.2d 801 (2d Cir. 1973) for the principle that a state court action seeking to enjoin another's use of a disputed trademark automatically states a claim for relief under the Lanham Act and, accordingly, may be removed to federal court. This argument is without merit.

In *Beech-Nut*, the manufacturer of "Life Savers" mints developed and marketed a new line of breath mints, labeled "BREATH SAVERS," in an effort to capture a portion of the market long dominated by Warner Lambert. In response, Warner Lambert quickly introduced a competitive product, similarly packaged and priced, called "BREATH PLEASERS." To protect its new product from Warner Lambert's counter-sally, Beech-Nut filed suit in New York State court alleging trademark infringement and unfair competition.[11] It sought also to enjoin introduction of the "BREATH PLEASERS" mints. Defendant promptly removed the suit to federal court and the plaintiff's motion to remand was denied. A panel of this court subsequently affirmed denial of the motion to remand because "the claims set forth in the complaint could have been brought under Section 43(a)" of the Lanham Act. *Beech-Nut, Inc., supra*, 480 F.2d at 803.

The arguments of Mushroom Makers notwithstanding, it is clear that *Beech-Nut* cannot be read to permit federal removal jurisdiction over all state actions to enforce or protect a trademark. To the contrary, in averring likelihood of consumer confusion over the origin of "BREATH PLEASERS" mints, Beech-Nut's complaint stated the elements of a claim under the Lanham Act.[12] Thus, in upholding federal removal jurisdiction, the court evidently concluded that the

---

**10.** Perhaps in recognition of its tenuous position, Mushroom Makers argues that Judge Weinfeld's "finding" in the declaratory action that its principal place of business is located in Mississippi ought to be accorded preclusive effect here. Contrary to its assertion, the location of Mushroom Makers's business was neither placed in dispute by Barry during the earlier trial, nor essential to the district court's judgment. *Mushroom Makers, Inc., supra*, 441 F.Supp. at 1224 n.10. More importantly, however, prior adjudications of jurisdictional facts cannot be accorded collateral estoppel effect in a subsequent action when a challenge is raised, not to the first court's judgment, but to the second court's jurisdiction. Restatement (Second) of Judgments § 14, comment c at 114 (Tent. Draft No. 5, 1978). Otherwise, the second court's jurisdiction would be subject to the judgments of the first. *But see Wood v. United Air Lines, Inc.*, 216 F.Supp. 340, 342–45 (E.D.N.Y.1963).

**11.** Paragraph seven of Beech-Nut's complaint reads:

Defendant's use of the notation Breath Pleasers and its . . . packaging in connection with the sale of the goods of defendant is likely to cause confusion or mistake or to deceive purchasers into the belief that such products . . . are products of plaintiff or that defendant and its products are endorsed by plaintiff or are sponsored by plaintiff or are connected in some way with plaintiff, and defendant's use thereof constitutes infringement of plaintiff's trademark and unfair competition by defendant with plaintiff.

**12.** In any action under the Lanham Act for trademark infringement or unfair competition, the ultimate question is whether an appreciable number of purchasers is likely to be misled or deceived as to the origin of the goods. *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978). Determination of the question requires consideration of numerous factors, including the strength of a plaintiff's mark, its length of use, the degree of similarity between the two marks, the proximity of the two products, the likelihood that the

complaint claimed a right created by federal law as "an element, and an essential one," of its cause of action. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974), *quoting, Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936).[13] By no means, however, did the court purport to permit removal jurisdiction over actions predicated solely on state law, simply because a trademark was implicated.

■ In marked contrast to Beech-Nut's complaint, Barry has endeavored carefully to avoid stating a cause of action cognizable under federal law. In *American Footwear Corp. v. General Footwear Co., Ltd.*, 609 F.2d 655 (2d Cir. 1979), this Court recently emphasized that likelihood of consumer confusion is "the crucial issue" in any action alleging trademark infringement or unfair competition under the Lanham Act. *Id.* at 658, 664–665. Yet, Barry's complaint assiduously avoids any allegation or claim of confusion, trademark infringement, or unfair competition. Instead, it merely asserts that Mushroom Makers's continued use of the MUSHROOM mark "is likely to dilute the distinctive quality" of its mark in violation of the New York antidilution statute. Thus, the complaint is carefully drafted to cover only those elements of a state action for dilution as recently defined by the New York Court of Appeals in *Allied Maintenance, supra*.[14] It therefore fails to state a claim under the Lanham Act, and does not give rise to a federal question within the original jurisdiction of the district court.

prior owner will bridge the gap, actual confusion, defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. *Id.; Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

13. In similar circumstances, other courts have found federal question jurisdiction only if the complaint specifically asserted, or claimed protection under, federal trademark law. *See, e. g., Application of State of New York*, 362 F.Supp. 922, 927–28 (S.D.N.Y.1973); *Cue Publishing Co. v. Colgate-Palmolive Co.*, 233 F.Supp. 443 (S.D.N.Y.1964).

14. Actions for infringement or unfair competition are designed to redress public confusion or competitive deception. A dilution action, how-

## IV.

Since the district court lacked both diversity and federal question jurisdiction over Mushroom Makers's removal petition, Barry's motion for remand should have been granted. Accordingly, the judgment of the district court is vacated and the cause is remanded to the district court for entry of an order remanding the action to New York Supreme Court.

ever, protects against "the gradual whittling away of a firm's distinctive trademark." *Allied Maintenance Corp., supra*, 42 N.Y.2d at 544, 399 N.Y.S.2d at 632, 369 N.E.2d at 1166. Thus, as construed by the New York Court of Appeals, § 368–d extends the protection afforded trademarks beyond that provided under the Lanham Act, and creates an entirely separate cause of action designed to check the "cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark." *Id. See Continental Corrugated Container Corp. v. Continental Group, Inc.*, 462 F.Supp. 200, 206–07 (S.D.N.Y.1978); Note, 46 Ford.L.Rev. 1315 (1978).