**Ada GONZALEZ, Plaintiff,**

v.

**SUPERMARKETS GENERAL CORPORATION, d/b/a Pathmark Supermarket, Defendant.**

**No. 87 Civ. 1174 (RWS).**

United States District Court, S.D. New York.

Oct. 9, 1987.

Arthur L. Kagan, P.C., Bronx, N.Y., for plaintiff.

Kral, Clerkin, Redmond & Ryan, New York City (James C. Clerkin, of counsel), for defendant.

OPINION

SWEET, District Judge.

Plaintiff Ada Gonzalez ("Gonzalez") has moved for an order remanding this negligence action to the state court from which it was removed. Defendant Supermarkets General Corporation ("Supermarkets") has opposed the motion, and argument was heard on June 19, 1987. For the reasons set forth below, the motion to remand is granted.

## Prior Proceedings

On January 27, 1987, Gonzalez commenced an action against Supermarkets alleging that she slipped and fell in one of the supermarkets it operates in New York. On February 19, 1987, Supermarkets removed the case to federal court pursuant to 28 U.S.C. 1441 on grounds of diversity of citizenship, 28 U.S.C. 1332.

## Facts

Gonzalez is a resident and a citizen of New York. Supermarkets, d/b/a Pathmark Supermarkets, is a corporation organized under the laws of the state of Delaware. Supermarkets owns and operates retail stores in eight states in the New England and mid-Atlantic regions, including New York and New Jersey. Its corporate headquarters is in New Jersey, and it holds stockholders' meetings in that state. Supermarkets uses the Bank of New York as its primary financial agent, its transfer agent and registrar, and its corporate trust agent. Of the fourteen corporate officers, one resides in New York, and the rest in New Jersey.

The assistant secretary and assistant treasurer of Supermarkets has stated by affidavit that 75 Supermarkets business locations are in New York and 78 are in New Jersey, without a breakdown as to how many of the locations are revenue producing retail operations and how many are administrative locations. The affidavit also sets forth that Supermarkets employs approximately 14,000 employees in New Jersey, and 10,000 in New York, but does not establish how many of those employees are associated with the headquarters operations and how many are employed by retail operations. The Annual Report of Supermarkets states:

> The Company's retail stores [have] the most significant concentration in the New York, Boston and Philadelphia metropolitan areas.

No mention is made in that paragraph of a significant concentration of stores in New Jersey.

The corporation has also submitted documents that establish that it derives 32.2% of its corporate income from its New York operations, a figure well above the 12.5% that would be the case if income were derived equally from the eight states in which Supermarkets does business. Supermarkets has produced no evidence as to the income derived from its New Jersey operations.

## Place of Business for Diversity Purposes

Supermarkets removed this case from state court pursuant to 28 U.S.C. 1441 on the grounds that this court has original jurisdiction under the provisions of 28 U.S.C. § 1332, which provides for diversity jurisdiction. The statute provides:

> For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business.

28 U.S.C. § 1332(c).

28 U.S.C. § 1447(c) provides: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case...." According to Gonzalez, this case was improvidently removed because, contrary to Supermarkets' position, there is not complete diversity since Supermarkets has a locus of operations in New York.

Supermarkets bears the burden of proof on this issue:

> When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by "competent proof."

*R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979).

Supermarkets cites the Honorable Edward Weinfeld's opinion in *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y.1959), for the proposition that this Circuit has adopted a so-called "nerve center" approach to the question of principal place of business. Judge Weinfeld wrote:

Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.

*Id.* at 865.

Gonzalez urges a test for determining a corporation's principal place of business which looks to the geographical location of substantial corporate *activity,* rather than the location where the corporation's directors make far-reaching policy decisions. Gonzalez cites *Inland Rubber Corp. v. Triple A Tire Service Inc.,* 220 F.Supp. 490 (S.D.N.Y.1963), which held that the locus of corporate operations is more important than the locus of overall policy direction.

In *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651 (2d Cir.1979), the Second Circuit discussed both *Scot's* "nerve center" test and *Inland Rubber's* "locus of operations" test, distinguishing between their applications:

Where corporate operations are spread across numerous states, courts have tended to emphasize those factors that identify the place where overall policy originates.... When, however, corporate operations are centralized, courts have tended to deemphasize the concentration on the corporate "nerve center" and to focus instead upon the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public.

*Id.,* at 655. As the Circuit analyzed the cases, the corporation at issue in *Scot* had decentralized operations, whereas the corporation at stake in *Inland Rubber* had centralized operations. The Court of Appeals briefly described the facts in *Scot,* highlighting that Underwood Corporation (the defendant seeking removal from New York State court on grounds of alleged Connecticut citizenship) had its largest production plant, greatest number of employees, and principal assets in Connecticut, its highest sales volume in California, and its

executive offices—the source of major policy decisions affecting every aspect of operations—in New York. On those facts, the court found that New York, as the corporate "nerve center", was the corporation's principal place of business. In its description of the facts in *Inland Rubber,* the Court of Appeals emphasized that Inland Rubber Corporation, a sales subsidiary of a manufacturing firm based in Ohio, was found to be a citizen of New York because it conducted its principal operations there—it had most of its employees and two thirds of its sales there, and its New York office prepared the company's financial statements, and formulated credit and advertising policies—despite the company's Ohio charter and headquarters.

In *R.G. Barry,* the Court held that the facts established an example of a corporation with centralized operations and therefore applied the "locus of operations" test. The court described the facts before it as follows: Mushroom Makers, Incorporated was one of many affiliates of Stevens Sportswear, a holding company with its headquarters in Mississippi. The court termed Mushroom Makers a "selling corporation" whose principal function consisted of designing and marketing women's clothing. Ninety-five to ninety-nine percent of Mushroom Makers' sales occurred in New York, and Mushroom Makers' president and sole full-time employee worked through a New York office, the only separate office of the company and the only address listed in catalogues and advertisements. Mushroom Maker's production, packing, and shipping took place in Mississippi, although employees of another affiliate performed this work. All other administrative and managerial corporate services were provided in Mississippi through contracts with Steven Sportswear affiliates. The court found that Mushroom Makers was a New York citizen, since New York was the community in which it had most contact with the public.

Supermarkets has failed here to show what proportion of its corporate income is attributable to retail operations in New Jersey in the face of a concession that its New York operations produce corporate income

well beyond what they would if operations in all eight states were producing the same. This allows an unrebutted inference that it is in New York that Supermarkets has its most extensive contact with the public, which weighs in favor of the locus of operations test. Under such circumstances, New York could be "the jurisdiction where [the corporation] is least likely to suffer from 'local prejudice,'" *R.G. Barry*, 612 F.2d at 656, and Supermarkets has, consequently, failed to meet its burden.

This action is remanded to the state court, and the clerk is directed to send a certified copy of the remand order to the clerk of the state court so that the state court can proceed with the case.

IT IS SO ORDERED.