Walter K. KRAUTH, Jr., William Miller, David E. Legere, Plaintiffs,

v.

**EXECUTIVE TELECARD, LTD., Defendant.**

No. 95 Civ. 3491 (RWS).

United States District Court, S.D. New York.

May 31, 1995.

---

642

Sutherland, Asbill & Brennan, New York City (Michael J. Levin, Peter J. Anderson, of counsel), for plaintiffs.

Ziegler, Ziegler & Altman, New York City (Steven Altman, Kenneth R. Ashford, of counsel), for defendant.

Richard Emery, New York City, for Sp. Committee of Independent Directors of Bd. of Directors of Executive Telecard, Ltd.

## OPINION

SWEET, District Judge.

The Defendant Executive Telecard, Ltd. ("EXTL" or the "Corporation") has moved to dismiss this action for lack of jurisdiction due to a lack of complete diversity between the parties. For the reasons discussed herein, the Defendant's motion is granted.

### Parties

Plaintiff Walter K. Krauth, Jr. ("Krauth") is a resident of Jonesboro, Georgia. He and William Miller ("Miller"), a resident of Bayside, New York, and David E. Legere ("Legere"), a resident of Williamsburg, Virginia, formed the EXTL Shareholders Protective Committee, (the "Committee"), in September 1994 for the purpose of soliciting proxies for the election of a slate of directors opposed to those being proposed by management of EXTL.

Defendant EXTL is a corporation incorporated in Delaware. The Corporation provides toll-free and related value-added telecommunication services to its customers. It uses both its own facilities and equipment and that of many third parties in countries around the world.

EXTL has a single class of stock authorized, issued and outstanding—common stock with a par value of $.001. This common stock is registered pursuant to § 12(b) of the Securities Exchange Act and is listed and traded on the NASDAQ—National Market System. 12,345,362 shares of this common stock were outstanding as of January 31, 1995.

EXTL's principal business is the provision of telecommunications services that enable customers, when placing phone calls within and between phone companies, to avoid high surcharges imposed by hotel switchboards. EXTL operates through agreements with over 60 Postal, Telegraph and Telephone Authorities ("PTTs") and other telecommunications administrations outside the United States to deliver these services. The agreements with PTTs authorize EXTL to install its own hardware and proprietary software at or near each of the PTTs' telephone-switching sites, thus allow EXTL customers to make calls from one country to another without necessarily having to be routed through the United States.

In the United States, EXTL has offices in New York and Colorado. Abroad, EXTL maintains office space in France, Belgium, Hong Kong, Singapore, Argentina, Anguilla and Switzerland. The Corporation provides services in over fifty countries throughout the world.

### Facts and Prior Proceedings

The facts and prior proceedings in this action are fully set forth in the opinions of October 24, 1994 (the "October 24 Decision"), *Krauth v. Executive Telecard*, 1994 WL 584556 (S.D.N.Y.) and December 13, 1994, *Krauth v. Executive Telecard*, 870 F.Supp. 543 (S.D.N.Y.1994) in the first *Krauth* action, 94 Civ. 7337 (RWS); and May 8, 1995 in

*Krauth v. Executive Telecard,* 95 Civ. 0106, 1995 WL 272556 (the "Third Action"), familiarity with which is assumed. A review of the prior proceedings relevant to this motion follows:

On October 7, 1994 EXTL commenced an action against Krauth, 94 Civ. 7282 (MHM), in this district and obtained an order to show cause which set down a date for hearing its motion for preliminary injunction and barred the distribution of proxies until after that hearing. On October 11, EXTL extended the date for its shareholders' meeting to October 28 and voluntarily dismissed its action.

On October 12, the Committee commenced an action, *Krauth I* seeking to enjoin EXTL from soliciting proxies in violation of the Securities Exchange Act of 1934. EXTL sought similar relief with respect to the Committee's proposed proxies, by way of a counterclaim, mirroring its original complaint. The parties were advised that the Court would consider the consolidation of a trial on the merits with the hearing on the preliminary injunctions. Expedited discovery proceeded.

On October 18, an evidentiary hearing consolidated with the trial was held in the course of which the state law counterclaims against counterclaim defendant Mayer, aligned as a plaintiff, were severed.

In *Krauth I,* Krauth challenged the EXTL proxy statement for omitting material information concerning the role of Richard O. Bertoli ("Bertoli") in the management and affairs of the company. Bertoli is a former advisor to the company and at that time and at present a convicted and incarcerated felon. Krauth also attacked the EXTL proxy solicitation for failing to include material facts concerning a proposed restructuring of EXTL.

In the counterclaim, EXTL challenged the Krauth proxy statement for inaccurately describing EXTL's July 29, 1994 board meeting, failing to identify accurately the role of Theodore J. Mayer [1] ("Mayer"), including a deceptive chart and stating that the effect of

the restructuring would be to remove assets from the jurisdiction of the United States.

In the October 24 Opinion, the Court found that:

> EXTL's proxy statement had failed to disclose the consultations between Bertoli and the corporate officers on pending issues of corporate management, including the proposed restructuring and the proxy contest, consultations which were conducted while Bertoli [was] serving a criminal sentence of obstructing an investigation into his conduct related to an alleged securities fraud. The omission violates Rule 14a–9, False and Misleading Statements, which charges: "No solicitation subject to this regulations shall be made by means of any proxy statement ... containing any statement which, at the time and in light of the circumstances under which it is made, is false and misleading with respect to any material fact, or which *omits* to state any material fact necessary in order to make the statements therein not false or misleading...." (emphasis added).

*Krauth,* 1994 WL 584556 at \*6.

In finding a violation of Rule 14a–9, the Court stated that:

> [i]ssues of management integrity are central to the election of directors, and the fact that certain of the current directors and officers chose to review corporate affairs, share confidential documents, and seek the advice of a person with Bertoli's criminal history is material to the discharge of their fiduciary obligations. (citations omitted).

*Id.* at \*7

In concluding that Opinion, the Court stated that:

> For the reasons discussed above, EXTL will be enjoined from soliciting proxies without disclosing the consultation by certain officers and directors with Bertoli concerning confidential and pending corporate matters. The Committee will be enjoined from soliciting proxies without clarifying the jurisdictional effect of the proposed spin-off. Leave is granted to make any

---

1. Mayer had been the Treasurer of EXTL until he    was discharged on September 30, 1994.

further applications to obtain relief consistent with these findings and conclusions.

All other challenges to the parties' respective proxy statements were not sustained. No appeals or motions for reconsideration were filed in that action. Judgment was entered on December 12, 1994.

On November 2, 1994 there was a hearing on a letter motion requesting that the Court order Defendants to set a date for the next Annual Shareholders meeting. Prior to that hearing, Defendants set a meeting date of January 5, 1995. The motion was "[d]enied as moot in view of the action taken by the defendants." *Memo Endorsed Order*, November 2, 1994.

On December 7, pursuant to an order to show cause secured by the Committee, a hearing was held on the present motions.

On December 9, EXTL filed a complaint alleging security act violations by the Committee and moved by order to show cause for a preliminary injunction to bar the Committee from solicitation based on the alleged omission of material facts. *Executive Telecard, Ltd. v. Krauth*, 94 Civ. 8911 (RWS). A hearing on this application was scheduled for December 15 with expedited discovery granted. The Court was informed on the 15th by the parties that the action would be dismissed. A notice of voluntary dismissal, signed by the Court, was filed on December 16, 1994.

On December 30, 1994, EXTL began distributing its revised proxy statement with a transmittal letter to shareholders.

On January 6, 1995, the Committee filed a complaint in the third action. The complaint alleged violations of the Exchange Act and the rules and regulations promulgated thereunder and sought various forms of injunctive relief, damages as against NDS, and other forms of relief. Specifically, the complaint stated 23 deficiencies in the transmittal letter and the proxy statement which it alleged were false and misleading, in violation of federal securities law.

Also on January 9, the Committee moved by order to show cause for expedited discovery, a temporary restraining order and a preliminary injunction. The Honorable Lawrence M. McKenna, as the Part I Judge, denied the request for temporary relief and set a return date on the motion for January 10, 1995.

On January 10, 1995, this Court heard the parties, granted the motion for expedited discovery and set a hearing date of January 16, 1995. On January 10, the parties all agreed that they would make no public comment on the proceedings and that EXTL would not issue written materials to its shareholders and would maintain a log of all conversations with its shareholders. An order to this effect was signed on January 12, 1995.

A hearing was held on January 16, 1995.

On January 20, Plaintiffs' counsel wrote to the Court informing the Court that the Third Action would be dismissed pursuant to Rule 41(a) with prejudice pursuant to a settlement agreement between the parties. The Court so ordered the dismissal on January 23, 1995.

On March 29, 1995 the Plaintiffs filed an order to show cause to bring on a motion to set aside this dismissal. The motion sought an order: 1) vacating the dismissal of The Third Action and its reopening pursuant to Rule 60(b); 2) granting Plaintiffs leave to amend their complaint to state a claim for enforcement of the settlement agreements; 3) directing EXTL to comply with the terms of the settlement agreements including to require it to issue proxy materials with the compromise slate of nominees to the Board of Directors, to establish a record date, and to schedule and conduct its annual shareholders meeting; and 4) appointing a special master to effectuate the terms of the settlement and compliance with this Court's Orders by EXTL until the annual shareholders meeting can be held.

A hearing was set for April 13, 1995 and argument on the motion was heard. The Court issued an opinion on May 8, 1995 which addressed the jurisdictional issues raised by Defendants who asserted that pursuant to the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, — U.S. —, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Court did not have jurisdiction over the settlement agreement in the

Third Action. The Court informed the parties that it would decide the threshold issue of jurisdiction before scheduling a hearing.

The Court's May 8 opinion held that the Court would require an independent basis of jurisdiction in order to hear the breach of the settlement agreement claims. The Court indicated that diversity jurisdiction appeared to be the most likely basis of jurisdiction, but that additional proof on the issue of the citizenship of EXTL at the time the motion to set aside the order of dismissal was filed was required to determine if complete diversity existed. A hearing date was set for May 16, 1995.

On May 15, 1995 a new action was filed by Plaintiffs (95 Civ. 3491 (RWS)) (the Fourth Action) which seeks: damages for breach of contract; specific performance of the settlement agreement; appointment of a special master to effectuate the terms of the settlement agreement; an order setting the date of the next shareholder's meeting; and attorney's fees. Subject matter jurisdiction in this action was based on an assertion of complete diversity of the parties.

The parties in the Third Action appeared before the Court on May 16. The Court accepted the present action as related to the Third Action. The Court then memo endorsed the motion in the Third Action "withdrawn," and that action was closed.

Defendants brought on this motion to dismiss for lack of subject matter jurisdiction by order to show cause. Argument and the testimony of Edward J. Gerrity ("Gerrity"), current Chair of EXTL, was heard on May 30, 1995. Briefs were submitted prior to the hearing and the motion was considered fully submitted at that time.

### Facts

EXTL was founded in 1989 in New York. In late 1990, EXTL opened offices in Denver, Colorado for the purpose of moving its "operator assisted function for long distance calls" in-house. Presently, approximately seventy five of the ninety EXTL employees work at the Denver office. The majority of the other employees are located in EXTL's foreign offices. The bulk of the financial operations of the company are carried out in Denver. No one disputes that the Network operations, accounting, customer services, management information services, sales, operations research, human resources and payroll functions are based in Denver.

EXTL filed a Form 10–Q with the SEC on February 21, 1995. That 10–Q represents on its face that EXTL is a Delaware corporation which maintains its principal executive offices in Denver, Colorado. Gerrity disavowed ever having seen the form and stated that it is was done without authorization of the Board.

The current Board of Directors is composed of Gerrity, Anthony Balinger ("Balinger"), Robert N. Schuck ("Schuck"), Stig Sonnerberg ("Sonnerberg"), Carl J. Corcoran ("Corcoran") and Daryl Engelman ("Engelman").

Gerrity has been Chair of the Board since March 17, 1995 and Chair of the Independent Committee consisting of himself and Sonnerberg. He visits the Nanuet office at least twice a week to conduct business and otherwise works out of his home in New York on EXTL matters and in his own consulting business.

Balinger has been acting Chief Executive Officer and President of EXTL since March or April 1995. Balinger is based in Hong Kong and has an office in Denver when he is in the United States. The record does not indicate how often that is.

Schuck is the Executive Vice President and Secretary of EXTL and according to Gerrity makes the decisions with Gerrity about how EXTL's money should be spent and is responsible for a significant portion of EXTL's revenues and many of the agreements entered into by EXTL. Schuck has an office in Nanuet.

Sonnerberg replaced Corcoran as a member of the Special Independent Committee when Corcoran resigned on March 24, 1995. Sonnerberg lives in Sweden.

Effective December 7, 1994, William V. Moore ("Moore"), the President of EXTL and Chairman of its Board, resigned. Corcoran was appointed Chairman of the Board and Chief Executive Officer of the Company

on December 16, 1994. Corcoran resigned as Chairman of the Board on or about March 16, 1995. He resigned from his position on the Special Committee and as Chief Executive Officer on March 29, 1995. He remains a director of the Board.

Engelman was the President and Chief Operating Officer of the Company from late December 1994 or early January 1995 until April 25, 1995 when he was dismissed by the Board. Engelman remains a director of the Board. He and Corcoran were on the Special Committee of the Board. Engelman was removed from that Committee on April 25, 1995. Corcoran resigned from the Committee on March 29, 1995. That Committee is now made up of Sonnerberg and Gerrity.

The management of EXTL is in a state of flux.

The current EXTL employees/Board members who have offices in Nanuet include Schuck, John J. Gitlin, Esq. ("Gitlin"), EXTL's in-house counsel, Dr. Harold Reisner ("Reisner"), who is responsible for shareholder relations, and two secretaries. Gerrity visits the office several times each week to conduct business.

All meetings of the Board of Directors have been held in New York and all shareholders meetings have been in New York, including the one currently scheduled for June 30 which is scheduled to be in New York.

Outside general counsel for the Corporation, Ziegler, Ziegler & Altman and counsel to the Special Committee, Richard Emery, P.C. are located in New York.

A March 16, 1995 letter from Schuck to Broadgate Consultants, a New York-based public relations firm, notified Broadgate that all press releases were to be cleared by Ziegler, Ziegler & Altman and counsel to the Special Committee before dissemination.

Because of the control contest, and the reshuffling of management that has resulted, the management of the company has passed to the Board of Directors.

## Discussion

### The Principal Place of Business of the Corporation for Diversity Purposes is New York

It is well established that diversity jurisdiction requires complete diversity between the parties opposed in interest. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); Wright and Miller, § 3605.

For the purposes of establishing diversity under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and the State where it has its principal place of business."

■ Plaintiffs contend that the principal place of business is now in Denver. In the Third Action, the principal place of business of EXTL was described in the complaint as New York. The issue of principal place of business has not been litigated to date in any of these related actions. Subject matter jurisdiction in the prior actions was based on federal question jurisdiction. 28 U.S.C. § 1331. EXTL contends that its principal place of business is and has, since the filing of the first action, been Nanuet, New York. Whether federal diversity jurisdiction exists is determined by examining the citizenship at the time the action is commenced. Wright and Miller § 3607. In this case, the relevant date is May 16, 1995.

Whether the principal place of business is in Colorado (Denver) or in New York (Nanuet) determines whether this Court has jurisdiction to hear this complaint since Miller is a New York resident.

The Court of Appeals has recognized two different tests for determining the principal place of business of a corporation. The choice of tests depends on the structure and nature of the corporation.

■ Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.

*Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y.1959).

■ Where corporations are centralized, however, courts seek to determine the location from which the corporation has its most extensive contacts, or greatest impact on, the general public. *R.G. Barry v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979). *Inland Rubber Corp. v. Triple A Tire Service Inc.,* 220 F.Supp. 490 (S.D.N.Y.1963), held that in cases where there are only a few places of business, the locus of corporate operations is more important than the locus of overall policy direction. The test for such centralized corporations has also been called the "place of operations" or "locus of operations" test. *See Center for Radio Information, Inc. v. Herbst,* 876 F.Supp. 523, 525 (1995).

In *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651 (2d Cir.1979), the Second Circuit discussed both *Scot's* "nerve center" test and *Inland Rubber's* "locus of operations" test, distinguishing between their applications:

> Where corporate operations are spread across numerous states, courts have tended to emphasize those factors that identify the place where overall policy originates.... When, however, corporate operations are centralized, courts have tended to deemphasize the concentration on the corporate "nerve center" and to focus instead upon the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public.

*Id.,* at 655.

As the Circuit analyzed the cases, the corporation at issue in *Scot* had decentralized operations, whereas the corporation at stake in *Inland Rubber* had centralized operations. The Court of Appeals briefly described the facts in *Scot,* highlighting that Underwood Corporation (the defendant seeking removal from New York State Court on grounds of alleged Connecticut citizenship) had its largest production plant, greatest number of employees, and principal assets in Connecticut, its highest sales volume in California, and its executive offices—the source of major policy decisions affecting every aspect of operations—in New York. On those facts, the court found that New York, as the corporate "nerve center", was the corporation's principal place of business.

In its description of the facts in *Inland Rubber,* the Court of Appeals emphasized that Inland Rubber Corporation, a sales subsidiary of a manufacturing firm based in Ohio, was found to be a citizen of New York because it conducted its principal operations there—it had most of its employees and two thirds of its sales there, and its New York office prepared the company's financial statements, and formulated credit and advertising policies—despite the company's Ohio charter and headquarters.

In *R.G. Barry,* the Court held that the facts established an example of a corporation with centralized operations and therefore applied the "locus of operations" test. The court described the facts before it as follows:

> Mushroom Makers, Incorporated was one of many affiliates of Stevens Sportswear, a holding company with its headquarters in Mississippi. The court termed Mushroom Makers a "selling corporation" whose principal function consisted of designing and marketing women's clothing. Ninety-five to ninety-nine percent of Mushroom Makers' sales occurred in New York, and Mushroom Makers' president and sole full-time employee worked through a New York office, the only separate office of the company and the only address listed in catalogues and advertisements. Mushroom Makers' production, packing, and shipping took place in Mississippi, although employees of another affiliate performed this work. All other administrative and managerial corporate services were provided in Mississippi through contracts with Steven Sportswear affiliates. The court found that Mushroom Makers was a New York citizen, since New York was the community in which it had most contact with the public.

■ EXTL is a company with operations around the world. Based on its expansive nature, the fact that 70% of the Corporation's income comes from transactions that occur and are for the most part processed outside of the United States, the "nerve center" test is the more appropriate test. Analyzing the

factors in this case under the "nerve center test", New York is the principal place of business.

■ The Committee has failed to show that the control of the company sits in Denver. While it is true that the latest SEC filings listed its "principal executive offices" in Denver, Colorado, this is only one factor to be considered. *See Uniroyal v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y.1974) *citing Kelly v. U.S. Steel Corp.*, 284 F.2d 850 (3d Cir.1960). (designating one state as the site of a company's executive office on SEC filings "[a]lthough significant, such designation is not dispositive of the issue.").

It is also undisputed that substantial US-based operations are run out of Denver. These include the fact that Telecall, a EXTL subsidiary is based in the Denver offices. The Vice–President of EXTL, Alan Mandel ("Mandel"), maintains his office in the EXTL office in Denver. The entire financial department of EXTL is based in Denver. The salaries to all EXTL employees are paid by a Denver entity. Most of the day-to-day operations are conducted out of Denver. These functions include marketing and sales; customer services; and customer billing. Finally, in the last two months press releases have been released from Denver, including one on May 23, 1995 announcing that its annual meeting will be on June 30 in New York.

All the operations in Denver represent, however, a small fraction of the Company's global business. EXTL estimates that Denver-based operations account for 30% of the Company's business. Were the only two locations of business, the Denver and the New York offices, there would be little question but that the main operations are in Denver where a bulk of the work of the Company is done.

In a "nerve center" analysis, these operational aspects of a company are not determinative. *See In re Joint Eastern and Southern Districts Asbestos Litigation*, 1990 WL 129194 at *4 (S.D.N.Y.1990). Instead, the Court should look to where corporate decisions are made and from where corporate policy flows. *Id.* The nerve center is the place "from which its officers direct, control and coordinate all activities." *Scot*, 170

F.Supp. at 865. Plaintiffs have not submitted sufficient evidence to prove that EXTL's corporate decisions are made in Denver. In fact, what little direction exists for the Corporation at this time, appears to emanate from the Board. The Board, through its Chair, Gerrity, is based in New York.

Other facts presented by Counsel for EXTL and Gerrity include that: the Chairman of the Board and the Chair of the Special Committee of two, is based in New York; the Executive Vice President, responsible for a significant portion of EXTL's revenues and many of the agreements entered into by EXTL with the foreign PTTs is located in Nanuet; all meetings of the Board of Directors have been held in New York; all shareholders meetings have been in New York, including the one currently scheduled for June 30; outside general counsel and counsel to the Special committee are located in New York; all corporate records are located in New York; all press releases were prepared by EXTL's New York based consultants, reviewed by executive officers in Nanuet and by outside counsel and counsel for the Special Committee; the shareholder liaison, Reisner, has his office in Nanuet.

Gerrity described the functions of the Denver operation as "back room operations." He asserts that he makes all corporate decisions from Nanuet. The plaintiffs have failed to prove any significant management decisions made by personnel in Denver.

Concluding that EXTL's principal place of business is in New York is consistent with the holding in *High Ridge Park Assoc. v. NYCOM Information Serv. Inc.*, 821 F.Supp. 835 (D.Conn.1993), involving a defendant with striking similarities to EXTL. In that case NYCOM, the defendant, was an operator and provider of long distance telephone services with a limited number of employees, a holding company for a related corporation that provided telephone services. NYCOM had 240 employees, all of whom were in Florida. The senior officers and directors of the company, however, were located in Connecticut. The *High Ridge* Court held that Connecticut was the principal place of business because:

the Stamford [Connecticut] office was responsible for running the daily operations of NYCOM, as well as formulating the overall business strategy. The Stamford office was responsible for press releases, management decisions, hiring personnel, legal and regulatory work, answering shareholder and investor inquiries and requests, and overseeing [the subsidiaries] operations. Furthermore, NYCOM held Board and shareholder meetings in Stamford.

*Id.*, at 837.

The same factors, considered in this case, point to New York and not Denver as the principal place of business.

It appears that the major direction and control of this Corporation at this time involves managing the control contest that has preoccupied these parties and this Court for much of the last eight months. The direction for this management function is also centered in New York, the somewhat impaired nerve-center of EXTL.

### Conclusion

Plaintiff has failed to establish Denver as EXTL's principal place of business. The motion is therefore granted and this action is dismissed. Submit judgment on notice.

It is so ordered.