Edwin N. EPSTEIN, Plaintiff,

v.

GUILFORD INDUSTRIES, INC., a Corporation (Formerly Guilford Woolen Mills, Inc.) and Guilford Woolen Fabrics, Inc., a Corporation, Defendants.

United States District Court
S. D. New York.
April 3, 1963.

Nemeroff, Jelline, Danzig & Paley, New York City, for plaintiff; Leonard M. Mandel, New York City, of counsel.

Hall, Patterson, Taylor, McNicol & Marett, New York City, for defendant Guilford Industries, Inc.; James J. Marett, New York City, of counsel.

Pennie, Edmonds, Morton, Taylor & Adams, New York City, for defendant Guilford Woolen Fabrics, Inc.; Robert McKay, New York City, of counsel.

McLEAN, District Judge.

This is a motion by plaintiff to remand this action originally begun in the Supreme Court, New York County and removed to this court by the defendants on the ground of diversity of citizenship. Plaintiff claims that defendant Guilford Woolen Fabrics, Inc. ("Fabrics"), has its "principal place of business" in New York within the meaning of 28 U.S.C. § 1332, that it is therefore a citizen of New York and that conse-

quently there is no diversity, since plaintiff is also a New York citizen.

The question is one of fact. The relevant information disclosed by the moving and opposing affidavits may be briefly summarized as follows:

Defendant Guilford Industries, Inc. ("Industries"), is a Maine corporation engaged in manufacturing woolen fabrics in Guilford, Maine. Defendant Fabrics is its sales agent. Fabrics also acts as sales agent for at least one other manufacturer.

Fabrics is a Maine corporation. Its bylaws state that its "principal office" shall be in Guilford, Maine. All its capital stock is owned by Industries. It has only two officers, a President-Treasurer and a Clerk. They each reside in Maine. The President-Treasurer is also an officer of Industries. Fabrics has three directors, its President-Treasurer and his brother and mother. They all reside in Maine. Its stockholders' meetings are held in Maine.

Fabrics' office in Maine consists of space in the office of Industries. Fabrics maintains its principal bank account in Maine, but it has no other property there. It keeps all its financial, accounting, purchase and invoice records in Maine. It has two or three employees there, of whom one is the President-Treasurer. Its other employees, wherever situated, are paid by check sent from Maine. It files its federal income tax returns in Maine.

Orders obtained by Fabrics from customers are subject to acceptance by its principal, Industries, in Maine. This fact would be relevant if the issue were whether or not the parent company, Industries, is doing business in New York, but it does not seem to me to bear upon the present question. We are not concerned here with the relations between Fabrics and its principal, but simply with the issue of where Fabrics' own principal place of business is.

Fabrics is qualified to do business in New York. It pays taxes in New York as a foreign corporation. It has an office

in the Empire State Building in New York City, characterized by plaintiff as "elaborate," for which it pays a rent of $23,000 per year. It owns its office furniture and equipment there situated. This office is listed in the Manhattan telephone directory and in the "Yellow Pages."

Fabrics has some 17 employees in New York, including most of its salesmen, who operate out of the New York office. The sales managers of its various product lines make their offices in New York. The president of Fabrics comes to New York on an average of once a week, presumably to oversee operations here. Fabrics has a small bank account in New York.

The confirmation of orders which are sent to its customers are headed "Guilford Woolen Fabrics, Inc., Empire State Building, 350 Fifth Avenue, New York 1, New York." There is a place at the bottom of the form for acceptance at Guilford, Maine, by Industries, i. e., by Fabrics' principal. There is nothing on the form to indicate that Fabrics itself is located anywhere other than New York.

The invoices which are sent to Fabrics' customers are similarly headed "Guilford Woolen Fabrics, Inc., Empire State Building, 350 Fifth Avenue, New York 1, New York."

Most of Fabrics' customers are located in the New York area and most of its sales are solicited here. Fabrics does have a small sales office in California with only a few employees to service the West Coast.

Policy decisions, including the "control" and "co-ordination" of sales activities are said by defendant to be made by its President-Treasurer and its Clerk. Since they spend most of their time in Maine, most of the decisions are made there.

The question of fact here presented is a rather close one, and like most questions of fact, it finds no exact parallel in the decided cases. Both sides point to Scot Typewriter Co. v. Underwood Corp.,

170 F.Supp. 862 (S.D.N.Y.1959), in which the court emphasized the place where the corporate officers "control and co-ordinate" the corporate activities. Apparently defendant has used these words in its affidavits in an effort to bring the case within that decision. Plaintiff, on the other hand, with similar intent, characterizes defendants' New York office as its "nerve center," another phrase used in the Scot opinion. Both attempts have an obvious bootstrap aspect. Whether or not the Scot case is a precedent for this one must depend upon a comparison of the facts of the two situations rather than upon a parroting of the court's language in the earlier decision.

The Scot case held that the "principal place of business" of a large manufacturer of typewriters and business machines was in New York, where its executive offices were located, rather than in Connecticut, where its manufacturing plants were situated. The Chairman, President, three of the five Vice Presidents, Secretary, Treasurer, Controller, Sales Manager and various other corporate officers made their offices in New York. The personnel, industrial relations, public relations, purchasing, rental, general office sales, international, advertising and sales promotion departments were located in the New York office. Customer relations with respect to service, credit and accounting affecting sales wherever made were administered from New York. This is what the court referred to when it characterized the New York office as the "nerve center" of the corporation.

After considering all the evidence in the case before me, I am convinced that there is no real parallel between it and the Scot case. We do not have here a large corporate enterprise with complex and far-flung activities. We have what seems to be essentially a family business, which does its manufacturing in Maine and its selling, or most of it, in New York. The executive head of the business lives in Maine, but most of the people who do the selling, which is the

business of the subsidiary with which we are here concerned, operate in New York. The executive head comes to New York frequently. Most of the customers of the company deal with it through its New York office, which is where the selling is done. The functions for which this corporation exists are carried out primarily in New York, regardless of where its President lives or its records are kept. On balance, I conclude that in any realistic sense, New York is Fabrics' "principal place of business."

The motion to remand is granted. Settle order on notice.