**COMPUCON DISTRIBUTORS OF NEW ENGLAND, INC., Plaintiff,**

v.

**Bruce W. COOPER, BWC Enterprises, and Susan Lohnes, Defendants.**

No. 87 Civ. 4407 (GLG).

United States District Court, S.D. New York.

June 6, 1988.

Beck Liebman Petrone, P.C., White Plains, for plaintiff; Barry G. Liebman, of counsel.

Frank L. Bridges, Needham, Mass., Warshaw, Burstein, Cohen, Schlesinger & Kuh, New York City, for defendants; James E. Daniels, of counsel.

OPINION

GOETTEL, District Judge:

The plaintiff, Compucon Distributors of New England, Inc. ("CDNE"), is a distributor of microwave components and connectors. The defendant Bruce Cooper was formerly employed by CDNE as Vice–President in charge of sales activities. Cooper conducts sales representative activities through the defendant BWC Enterprises, an entity which he controls. The defendant Susan Lohnes is also a former employee of the plaintiff. She had engaged in sales solicitation on behalf of the company. Cooper and Lohnes left the plaintiff's employ in or about March 1987.

According to the complaint, Cooper did not devote his full time and attention to the plaintiff's business during his employ, conducted a separate business of his own during that time, and diverted corporate opportunities to himself. Moreover, it is alleged, he used resources belonging to CDNE, including its employees, to advance his own interests to CDNE's detriment. The complaint further alleges that since he left the company, Cooper has engaged in business in direct competition with CDNE, in contravention of a non-competition agreement he entered with CDNE, and that he has solicited and induced CDNE employees, including the defendant Lohnes, to leave CDNE's employ and to work for him. Based on these allegations, CDNE seeks recovery against Cooper on several theories, including breach of contract, breach of fiduciary duty, negligence, and conversion.

In addition to the allegations listed above, the plaintiff claims that all of the defendants have used confidential information belonging to CDNE to its detriment. Such information allegedly includes customer lists, financial information, market-

ing methods, price lists, and various other business information. Therefore, CDNE seeks recovery against all of the defendants for misappropriation of confidential information, unfair trade practices, and conspiracy.

The motion before us is the defendants' motion to dismiss for lack of subject matter jurisdiction. There being no federal question or statute pertinent to the case, the relevant inquiry is whether we have diversity jurisdiction under 28 U.S.C. § 1332. Since it is not disputed that the defendants are all citizens of Massachusetts, the question turns on whether the plaintiff also may be deemed a citizen of Massachusetts. For the reasons discussed below, we answer this question in the affirmative. Therefore, we hold that we do not have diversity jurisdiction under 28 U.S.C. § 1332, and grant the defendants' motion to dismiss.

## DISCUSSION

For purposes of diversity jurisdiction, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c). It is not disputed that CDNE was incorporated by New York State. The issue, then, is whether the principal place of business of CDNE is in New York or Massachusetts.

There are two tests for determining the principal place of a corporation's business. One is the so-called "nerve center" test. This test places the principal place of business at the location of the company's headquarters. 1 J. Moore, Moore's Federal Practice ¶ 0.77[3.–2] (2d ed. 1986). The nerve center test is designed to locate the principal place of business of corporations which have substantial operations, other than executive support, in more than one state. It has been suggested that the application of the nerve center test is properly confined to corporations of that type. *See, e.g., Inland Rubber Corp. v. Triple A Tire Service, Inc.,* 220 F.Supp. 490, 496 n. 16 (S.D.N.Y.1963); Moore's Federal Practice, *supra,* ¶ 0.77[3.–3] at p. 717.69, and cases cited at n. 12; *but cf. Philip Morris,*

*Inc. v. Sun Leasing Co.,* 371 F.Supp. 1233, 1234 (S.D.N.Y.1974) (finding that this district favors taking the nerve center approach, with no mention of the corporation's structure of operations). From this perspective, the nerve center test is inappropriate since CDNE conducts business from only two locations, New York and Massachusetts.

The second test, applicable here, is the so-called "place of operations" test. This test fixes a corporation's principal place of business at the location where its actual physical activities are conducted, rather than where overall executive direction takes place. *See e.g., Inland Rubber Corp.,* 220 F.Supp. at 496.

With this test in mind, the relevant background facts are as follows. The two major shareholders of CDNE are Abraham Siegal and William Miner. Siegal and Miner also own two other corporations in the microwave component distributorship business, Compucon Distributors, Inc. ("CDI") and Compucon Distributors–Midwest, Inc. ("CDMW"). These companies and CDNE each service a distinct geographical region. As its name suggests, CDNE services the New England area. (It also services some customers in upstate New York; approximately 20 percent of its business is attributable to New York.) Likewise, CDMW services the Midwest. CDI services the New York metropolitan area.

Although each of these companies share common shareholders in Siegal and Miner, they are wholly separate entities and not affiliates; none of the companies holds shares in any other. They do, however, cooperate to each one's benefit, and act collectively in certain areas. One of the most important examples of their cooperation lies in the fact that the companies purchase on a joint basis. By purchasing together, each company secures greater bargaining leverage to obtain the best price possible. This point is of peculiar importance to a middleman operation such as the plaintiff's.

Given the importance of efficient purchasing to the plaintiff's profitability, the manner and location in which CDNE's pur-

chasing is effected bears on an analysis of its principal place of business. CDNE submits a "buy list" of items needed in inventory based on sales orders to Siegal or Miner in New York. This list factors into the size of the joint purchase order. However, by having on hand sufficient inventory readily available for immediate shipment, CDNE gains a competitive advantage over other individual sales representatives who must order from the manufacturer. For this and other reasons, sales history is also incorporated into the joint purchasing decision, in addition to the submitted buy lists. The joint purchasing needs analysis is performed in New York. In addition, the actual placing of the order with the manufacturer, and payment therefor, is typically done in New York.

Although purchasing takes place primarily in New York, receiving and shipping, the other side of the coin, is typically done by CDNE in Massachusetts, and it is Massachusetts where the company maintains its inventory. The plaintiff notes that on occasion products are shipped directly from New York. It appears, however, that this is the exception rather than the rule. Indeed Massachusetts was purposely selected as the location for CDNE's offices and storage in order to afford the company greater proximity to its customers, the bulk of which are in New England. The location also affords CDNE easy access to its primary supplier, Omni Spectra, which is located in Massachusetts.

Since product is received at and shipped from Massachusetts, CDNE necessarily holds a real estate interest in that State (a lease). We have been directed to no real estate interest held by CDNE in New York. Consequently, the only telephone lines running to CDNE go to its offices in Massachusetts.

The catalyst for CDNE's purchasing, receiving, and shipping activities is, of course, its solicitation of sales. Direct solicitation takes place in Massachusetts, and

all of CDNE's salespersons are located there. The plaintiff argues that advertising and promotion decisions are made in NY, but we presume that the advertising relevant to CDNE is actually conducted in the New England area rather than in New York.[1]

Other pertinent facts include the following. Revenue and receivables are collected in New York, and bills are paid from New York; bank accounts are held in New York and credit is secured from New York banks. Records are kept in New York, but copies are kept in Massachusetts. Because original records are kept in New York, it follows that financial statements and income tax reports are prepared there. For Massachusetts' part, that State is the location of substantially all of CDNE's employees. Only two employees and a part-time bookkeeper are located in New York, whereas five to six employees (which number includes all of the salespersons) are located in Massachusetts.

The picture painted by the above discussion is that the activities which the plaintiff is in business to conduct—selling and distributing microwave components—occurs in Massachusetts. In contrast, most of the activities which take place in New York can be characterized either as overall executive direction, or as administrative support. This strongly suggests that the principal place of CDNE's business, under the place of operations test, should be fixed in Massachusetts. *Epstein v. Guilford Industries, Inc.*, 218 F.Supp. 286 (S.D.N.Y.1963).

This result comports with the stated purpose of diversity jurisdiction, which is to protect out-of-State citizens from the biases of local courts and juries. Given its greater visibility in Massachusetts, CDNE would more likely be popularly recognized as "local" there than in New York. It is a Massachusetts employer, and makes the greatest number of its purchases from a Massachusetts supplier.[2] For these reasons,

---

1. Neither party has indicated how much advertising CDNE does, nor the relative importance of advertising to CDNE's total sales.

2. It is true that revenues are remitted to New York, but we do not think that bears on the issue of CDNE's visibility.

CDNE is likely to be welcome in Massachusetts, and not likely to face hostility in its courts as a "foreigner." *See Inland Rubber Corp.*, 220 F.Supp. at 495.

CONCLUSION

For the reasons discussed above, we find that CDNE's principal place of business is in Massachusetts, and that it is therefore a citizen of that State. Consequently, we lack subject matter jurisdiction under 28 U.S.C. § 1332, and for that reason grant the defendant's motion to dismiss. We therefore do not reach the issue of personal jurisdiction over the defendants, and do not address the plaintiff's motion for preliminary injunction.

SO ORDERED.