**CENTER FOR RADIO INFORMATION, INC., Plaintiff,**

v.

**Martin HERBST d/b/a Bethlehem Publishing Co., and Bethlehem Publishing Inc., Defendants.**

**No. 94 Civ. 6845 (JGK).**

United States District Court, S.D. New York.

Feb. 6, 1995.

Ivan Van Leer, Van Leer & Greenberg, New York City, for plaintiff.

Neal R. Platt, Shwal & Platt, New York City, for defendants.

**OPINION AND ORDER**

KOELTL, District Judge:

The plaintiff, Center for Radio Information ("CRI"), has moved to remand this case to state court, pursuant to 28 U.S.C. § 1447, on the basis that the Court does not have diversity jurisdiction over the action under 28 U.S.C. § 1332. The defendants, Bethlehem Publishing and Martin Herbst, oppose the plaintiff's motion and have cross-moved for the dismissal of certain claims against them.

After hearing oral argument on the motions, and conducting an evidentiary hearing on the issue of the citizenship of the defendants, the Court grants the plaintiff's motion to remand, and denies the defendants' cross-motion without prejudice to renewal in the appropriate forum.

## I.

CRI brought this action in state court based upon Bethlehem Publishing's alleged breach of a partnership agreement between CRI and Bethlehem Publishing that was entered into on April 8, 1992. In the partnership agreement, the parties agreed that Bethlehem Publishing, of which Martin Herbst is president, would publish a periodical called Radio Datatrak, containing statistical information about radio stations across the country. The publication represents a "book format" of the plaintiff's computer database in which such information is collected and catalogued. The parties agreed to share the revenues; they also agreed that the plaintiff's work product would remain the exclusive property of the plaintiff at all times. Bethlehem Publishing terminated the agreement on June 20, 1994. The plaintiff alleges that it is entitled to: an accounting and its fair share of gross and advertising revenues; an injunction preventing the continued use and dissemination of its work product in any form; and damages for breach of contract and conversion.

The defendants filed a notice of removal pursuant to 28 U.S.C. § 1441(a) on September 21, 1994, alleging that this Court has diversity jurisdiction under 28 U.S.C. § 1332. The plaintiff then moved to remand the case on October 7, 1994, pursuant to 28 U.S.C. § 1447, arguing that this Court does not have jurisdiction because there is not complete diversity between the opposing parties. CRI is a New York corporation with its principal place of business in New York. The plaintiff claims that Bethlehem Publishing is a New York corporation with its principal place of business in New York and that Martin Herbst is a citizen of New York. The defendants argue that there is complete diversity between the parties because both defendants are New Hampshire citizens; they argue

that Martin Herbst's citizenship is irrelevant in any case because he was improperly joined as a party and that the claims against him, therefore, should be dismissed. On November 10, 1994, the defendants filed a notice of cross-motion to dismiss all claims against Martin Herbst and to dismiss the fraud claim against Bethlehem Publishing pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because the factual issues pertaining the defendants' citizenship were very much in dispute, particularly with respect to Bethlehem Publishing's principal place of business, the Court held a hearing on the issue of citizenship on January 24, 1995, after permitting the parties to engage in discovery on that issue. *See Navedo v. Pathmark,* No. 86 Civ. 4218, 1986 WL 536, *1–2 (S.D.N.Y. Dec. 22, 1986) (Haight, J.) (granting the plaintiff's motion for an evidentiary hearing on the question of the defendant's principal place of business and permitting discovery on the issue).

## II.

■ A district court has jurisdiction based on diversity "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different States...." 28 U.S.C. § 1332(a)(1) (1988). The requirement of complete diversity between opposing parties is "explicit and unequivocal." *International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). 28 U.S.C. § 1332(c), which governs the citizenship of corporations for purposes of diversity jurisdiction, provides, in relevant part: "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1) (1988). The defendants bear the burden of proof with respect to whether diversity jurisdiction exists. *R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979) ("When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls

squarely upon the removing party to establish its right to a federal forum by 'competent proof.'") (citations omitted); *see also Forrester v. Supermarket Gen. Corp.*, No. 92 Civ. 1265, 1992 WL 316146, *1 (S.D.N.Y. Oct. 19, 1992) (Wood, J.) (same).

While the plaintiff contends that New York is both Bethlehem Publishing's state of incorporation as well as its principal place of business, the hearing focused upon the facts relevant to determining Bethlehem Publishing's principal place of business. Because the Court finds that the defendants failed to prove that New Hampshire, and not New York, is Bethlehem Publishing's principal place of business, it is unnecessary to address the plaintiff's claim pertaining to Bethlehem Publishing's state of incorporation.[1]

Courts within the Second Circuit use two basic tests for determining a corporation's principal place of business for diversity purposes: the "nerve center" test and the "public impact" or "place of operations" test. The appropriate test to be applied is determined by the nature of the corporation in each case. In *In re Joint E. & So. Dists. Asbestos Litig.*, No. 87 Civ. 0537, 1990 WL 129194 (E.D.N.Y. Aug. 30, 1990), Judge Sifton explained:

> The determination of a corporation's principal place of business is made from a fact-based analysis of the business, operations, and structure of each corporation. Courts consider the corporation's purpose, the nature of its activities, and the extent and location of these activities. No one test or single element is controlling. The different tests reflect the different types of corporations being analyzed.... Which facts are important and which are not in this analysis is a question for the court to decide.

*Id.* at *3 (citations omitted).

■ When a corporation's operations are decentralized and are spread across numerous states, courts generally use the "nerve center" test first articulated by Judge Weinfeld in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959). In

*Scot*, the court explained that where a corporation is involved in multistate activities, with offices, facilities or plants in various states, the location of its principal place of business is "governed by the totality of corporate activity at a given place, which, to borrow a phrase from another area of law, may be said to represent the 'center of gravity' of corporate function." *Id.* at 865 (citation omitted). The court went on to explain:

> Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. The test applied by our Court of Appeals, is that place where the corporation has an 'office from which its business was directed and controlled'— the place where 'all of its business was under the supreme direction and control of its officers.'

*Id.* at 865 (citations omitted).

■ When a corporation's operations are centralized, courts seek to determine the state in which the corporation has its most extensive contacts with, or greatest impact on, the general public. *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979) (noting the earlier articulation of this test in *Inland Rubber Corp. v. Triple A Tire Serv., Inc.*, 220 F.Supp. 490 (S.D.N.Y. 1963)); *see also Tucker Anthony, Inc. v. Bankers Trust Co.*, No. 93 Civ. 0257, 1994 WL 9683, *3 (S.D.N.Y. Jan. 10, 1994) (Kram, J.) (discussing when each test applies). This test has also been called the "place of operations" or "locus of operations" test. *See, e.g., Forrester v. Supermarket General Corp.*, No. 92 Civ. 1265, 1992 WL 316146, *1 (S.D.N.Y. Oct. 19, 1992) (Wood, J.); *Neat–N–Tidy Co. v. Tradepower (Holdings) Ltd.*, 777 F.Supp. 1153, 1156 (S.D.N.Y.1991) (Kram, J.).

---

1. The plaintiff argues that New York should be considered Bethlehem Publishing's state of incorporation because Bethlehem Publishing began as a New York corporation and, although it later merged with a New Hampshire corporation (which became the surviving corporation), no record of dissolution was ever filed in New York.

In *R.G. Barry Corp.*, 612 F.2d 651 (2d Cir.1979), the court held that New York was the defendant's principal place of business. *Id.* at 656–57. The court explained that because the defendant engaged in its most extensive contact with the public in New York, New York was the jurisdiction in which the defendant would be least likely to suffer from local prejudice, the historical, if not still viable, justification for diversity jurisdiction. *Id.; see also Compucon Distribs. of New England, Inc. v. Cooper*, 685 F.Supp. 424, 426–27 (S.D.N.Y.1988) (Goettel, J.) (noting that the result reached under the "place of operations" test comported with the stated purpose of diversity jurisdiction because the corporation was "likely to be welcome" and would not "face hostility . . . as a 'foreigner'" in that state) (citation omitted).

■ Because Bethlehem Publishing has only two offices, one in New York and one in New Hampshire, and therefore does not have "far-flung" operations, the public impact test is appropriate in determining its principal place of business. At the evidentiary hearing, the Court had the opportunity to hear testimony from the general manager of Bethlehem Publishing's New Hampshire office, as well as from Martin Herbst, Bethlehem Publishing's president. Based on its assessment of the credibility of the witnesses, along with its evaluation of the facts and arguments that have been presented, the Court finds that Bethlehem Publishing's principal place of business, for purposes of diversity jurisdiction, is in New York.

It is clear, despite the defendants' arguments to the contrary, that New York is the state in which Bethlehem Publishing has its greatest impact on the public. Significantly, the testimony presented at the hearing, the documents admitted into evidence and the arguments raised in the motion papers demonstrate that Bethlehem Publishing goes to great lengths to present itself as a New York corporation. In the Radio Datatrak publication, Bethlehem Publishing lists the New York office as its editorial and marketing office and the New Hampshire office as its production office. It lists more employees in New York than in New Hampshire although Martin Herbst testified that some of these employees are no longer employed by Bethlehem Publishing. At the hearing, Mr. Herbst testified that the editorial work actually is done in New Hampshire, but that Bethlehem Publishing lists its New York office as its editorial and marketing office, or headquarters, in order to benefit from the "cache" associated with New York City.

Additionally, the New York office serves as the sales and advertising headquarters. Customers who are interested in subscriptions have available to them an "800" telephone number that rings in the New York office. At the hearing, the plaintiff introduced a promotional newsletter created by Bethlehem Publishing that was designed to elicit inquiries into Bethlehem Publishing's publications and was sent to between three and four thousand current and potential subscribers. Notably, it listed only Bethlehem Publishing's New York address and provided the "800" telephone number. Bethlehem Publishing's New York office is its advertising headquarters—most advertisements are created in New York and then mailed to customers who are located, primarily, in New York, Los Angeles and Chicago. Also, Martin Herbst, working from the New York office, secured Bethlehem Publishing's only paying advertiser. Indeed, Cathy Devine, the general manager of the New Hampshire office, testified that the New Hampshire office is not involved in sales because it is "very far removed" from the customer base.

The defendants characterize the New York office as a promotional office devoted primarily to assisting the New Hampshire office in increasing its circulation through promotion, telemarketing and personal sales calls. Ms. Devine characterized the New Hampshire office as the "heart and soul" of Bethlehem Publishing; New Hampshire is where all of the production and printing, as well as almost all of the editorial work, is done. All of the publications are mailed to customers from the New Hampshire office and the New Hampshire office processes all renewal subscriptions. Moreover, invoices are issued out of New Hampshire and almost all payments are received in New Hampshire. Ms. Devine explained that she has extensive authority to make decisions without the explicit permission of Mr. Herbst or anyone else from the New York office, but that her authority is

substantially limited in that major expenditures and decisions require the approval of Martin Herbst.

The factors cited by the defendants do not support a finding that New Hampshire is Bethlehem Publishing's principal place of business. Similarly, the evidence with respect to the relative size of the offices [2] and the number of employees in each office [3] is insufficient. The factors discussed above demonstrate that Bethlehem Publishing presents itself to the public, to whom it advertises its products, as a New York publishing company. It was apparent from the testimony, and from the Court's own assessment of the witnesses, that the real "heart and soul" of Bethlehem Publishing is Martin Herbst, who spends most of his time in New York, who is registered to vote in New York and who only relatively recently changed his driver's license from New York to New Hampshire. Ironically, the functions of the New York office, which the defendants attempt to trivialize, are precisely those through which Bethlehem Publishing has established its most extensive contacts with, and had its greatest impact upon, the public. Bethlehem Publishing is in the business of selling its publications; it is through its New York office that Bethlehem Publishing interacts with the public to accomplish its sales objectives.[1]

For all of the foregoing reasons, the plaintiff's motion to remand is granted and the defendants' cross-motion to dismiss is denied without prejudice to renewal in the appropriate forum.

**SO ORDERED.**

---

2. The New Hampshire office is approximately three thousand square feet, while the New York office is less than nine hundred square feet. The New Hampshire office operates from Mr. Herbst's chalet which is more spacious than the part of his New York town house from which the New York office operates.

3. The New Hampshire office has four full-time employees and one part-time employee. The New York office has either three or four full-time employees and one part time employee.

4. Because the Court finds New York to be Bethlehem Publishing's principal place of business, it is unnecessary to determine Martin Herbst's citizenship for purposes of deciding the plaintiff's motion. In any case, Mr. Herbst's testimony that he is, "mentally", a New Hampshire resident because of his affinity for that state is unpersuasive, given that he resides, primarily, in New York (in an apartment in the same building as Bethlehem Publishing's New York office) and votes in New York.