**EUGENIA VI VENTURE HOLDINGS, LTD., Plaintiff,**

v.

**SURINDER CHABRA, Narinder Chabra, and Parvinder Chabra, Related Cases 05 Civ. 5330, 05 Civ. 5635, 05 Civ. 5816, Defendants,**

No. 05 Civ. 5277(DC).

United States District Court, S.D. New York.

Dec. 5, 2005.

Gibson, Dunn & Crutcher LLP by Mitchell A. Karlan, New York City, for Plaintiff.

Novak & Juhase by Kim Steven Juhase, Roseland, NJ, for Chabra Defendants.

Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman by Douglas E. Motzenbecker, Newark, NJ, for Defendant Reale.

### MEMORANDUM DECISION

CHIN, District Judge.

In these four related cases, which were brought pursuant to the alienage jurisdic-

---

**1.** In addition to these four cases, Eugenia has filed four other related cases, docket numbers 05 Civ. 5362, 05 Civ. 5397, 05 Civ. 7262, and 05 Civ. 7810, in which the defendants have not filed motions to dismiss.

tion provision of the diversity statute, plaintiff Eugenia VI Venture Holdings, Ltd. ("Eugenia"), alleges breach of fiduciary duty and fraud. Defendants Surinder Chabra, Narinder Chabra, and Parvinder Chabra in case numbers 05 Civ. 5277 and 05 Civ. 5330 and defendant Robert Reale in case numbers 05 Civ. 5816 and 05 Civ. 7262 move to dismiss the complaints for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] They contend that Eugenia's principal place of business is New York, not the Cayman Islands as Eugenia asserts, and that consequently complete diversity does not exist, for defendants are New York residents.

For the reasons set forth below, I hold, on the present record, that there is complete diversity of citizenship between the plaintiff and all defendants in each action. Accordingly, the motions are denied without prejudice to renewal after the completion of discovery.

### STATEMENT OF THE CASE

#### A. The Facts

As alleged in the complaints and set forth in documents submitted in support of and opposition to the motions, the facts are as follows:

#### 1. The Parties

Eugenia is a private investment company organized under the laws of the Cayman Islands and, according to the complaint, its principal place of business is the Cayman Islands. (Am. Compl. ¶ 2; Le Sueur Decl. ¶ 2).[2] Surinder Chabra, Nar-

---

**2.** References to "Am. Compl." are to the amended complaint filed in docket number 05 Civ. 5277. For purposes of this motion, the allegations in the complaints in 05 Civ. 5330, 05 Civ. 5635, and 05 Civ. 5816 are substantially similar. Accordingly, unless otherwise

inder Chabra, and Parvinder Chabra are or were officers and/or shareholders of AMC Computer Corp. ("AMC"). (Am. Compl.¶¶ 3–5). Reale is a former director and officer of AMC as well. (Reale Compl. ¶ 3).[3] Nominal defendant AMC is a corporation organized under the laws of New York with its principal place of business in New York. (Am. Compl. 5330[4] ¶ 6). The Chabras and Reale are residents of New York. (Am. Compl. ¶¶ 3–5; Reale Compl. ¶ 3).

### 2. *The Loans*

On January 30, 2003, Eugenia and AMC entered into an Amended and Restated Credit Agreement (the "Agreement") pursuant to which Eugenia lent funds to AMC. (Le Sueur Decl. ¶ 4; Am. Compl. ¶ 4). The loans were secured by plaintiff's first priority lien on substantially all of AMC's personal property, including its inventory, accounts and receivables, and proceeds. (Am.Compl.¶ 8). The Agreement required AMC to repay the loans through the Northern Trust Company in Chicago, Illinois. (Le Sueur Decl. ¶ 4). On May 5, 2005, AMC's board of directors informed plaintiff that defendants had submitted falsified borrowing base certificates to fraudulently obtain greater funding under the Agreement. (Am.Compl.¶ 12). Plaintiff alleges that AMC owes it approximately $15 million under the Agreement. (Reale Compl. ¶ 11; Am. Compl. ¶ 14).

### B. *Prior Proceedings*

Plaintiff filed these actions against the Chabras on June 3, 2005, and June 6, 2005, and against Reale on June 16, 2005, and June 22, 2005, asserting claims against them for fraud and breach of fiduciary duty. These motions followed.

Defendants contend that, although Eugenia was incorporated in the Cayman Islands, it has its principal place of business in New York, making it a citizen of that state. They argue further that, because defendants are citizens of New York, complete diversity of citizenship is lacking, and the complaint must therefore be dismissed for lack of subject matter jurisdiction. Plaintiff, on the other hand, maintains that its principal place of business is the Cayman Islands. Resolution of this motion thus turns on a single issue: whether Eugenia's principal place of business is New York or the Cayman Islands.

### C. *Eugenia's Principal Place of Business*

In opposition to the motion to dismiss, plaintiff submits the sworn declaration of Ben Le Sueur, a director of Eugenia, who states under penalty of perjury that Eugenia's principal place of business is the Cayman Islands. (Pl.Opp.Ex. A). Le Sueur further states that Eugenia holds meetings for its board of directors in the Cayman Islands and stores its legal and corporate records there. (Le Sueur Decl. ¶ 8). Its bank accounts are located in the Cayman Islands and the United States and are controlled by Bessemer Trust Company (Cayman) Limited ("Bessemer Trust Cayman"). (*Id.* ¶ 9). Additionally, certain officers of Bessemer Trust Cayman are directors of plaintiff. (*Id.* ¶ 7). These officers are responsible for Eugenia's investment decisions and its policies and procedures. (*Id.*).

---

noted, I cite to the amended complaint in 05 Civ. 5277.

**3.** References to "Reale Compl." are to the complaint filed in docket number 05 Civ. 5816.

**4.** References to "Am. Compl. 5330" are to the amended complaint filed in docket number 05 Civ. 5330.

Eugenia does not directly own any real property for business operations and does not have facilities for production, purchase, or storage of products or supplies. (*Id.* ¶ 6). Rather, it owns a portfolio of investments, cash in bank accounts, and interests in loans in North America, the Cayman Islands, and Japan. (*Id.* ¶ 3). Additionally, Eugenia does not have any employees, and none of its directors reside in the United States. (*Id.* ¶ 7).

All of defendants' dealings with Eugenia, however, took place in New York. (Chabra Affirm. ¶¶ 4–10). For example, the Agreement was negotiated in New York and all notices under the Agreement were to be sent to Eugenia care of Eagle Advisors at 299 Park Avenue, 24th floor, New York, New York. (*Id.* ¶ 4). Additionally, plaintiff entered into an agreement with AMC as "Eagle Advisors/Eugenia," under which AMC agreed to install and configure a network infrastructure for Eagle Advisors/Eugenia. (*Id.* ¶ 7). Plaintiff's mailing address in the Cayman Islands is care of Bessemer Trust Cayman. (*Id.* ¶ 8). Eugenia does not deny that its dealings with AMC took place primarily in New York, but instead states that the Agreement is only one of its many worldwide investments. (Le Sueur Decl. ¶ 5).

## DISCUSSION

### A. *Applicable Law*

#### 1. *Fed.R.Civ.P. 12(b)(1)*

A plaintiff invoking federal jurisdiction must include in its pleadings "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R.Civ.P. 8(a)(1). Eugenia has pled that all defendants are citizens of New York and that it is a citizen of the Cayman Islands, thereby satisfying the pleading requirement. (Am. Compl. ¶¶ 2–5; Reale Compl. ¶ 3). Defendants now present a factual challenge to Eugenia's stated basis for subject matter jurisdiction.

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo*, No. 98 Civ. 5793(RWS), 1999 WL 187205, at *2 (S.D.N.Y. April 5, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *See Zappia Middle E. Constr., Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998). As the party "seeking to invoke the subject matter jurisdiction of the district court," *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir.1996), the plaintiff bears the burden of demonstrating by a preponderance of the evidence that there is subject matter jurisdiction in the case. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005). Though "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F.Supp. 94, 95 (S.D.N.Y.1996), a court should " 'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." *Aurecchione*, 426 F.3d at 638 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000), and citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("[I]t is well established that, in passing on a motion to dismiss ... on the ground of lack of jurisdiction over the subject matter ..., the allegations of the complaint should be construed favorably to the pleader.")).

For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which is has been incorporated and of the State where it has its principal place of business." 28 U.S.C.

§ 1332(c)(1).[5] Defendants do not contest that Eugenia was incorporated under the laws of the Cayman Islands. (Chabra Affirm. ¶ 2). Defendants argue, however, that Eugenia's principal place of business is New York.

 The Second Circuit recognizes two tests for determining the principal place of business of a corporation. Where a corporation's activities are decentralized and spread across numerous states, courts apply what is known as the "nerve center" test. *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979). Under the nerve center test, courts focus on those factors that identify where the corporation's overall policy originates. *Id.* at 655. In contrast, where a corporation's activities are centralized, courts apply the "place of operations" or "locus of operations" test to determine a corporation's principal place of business. *Center for Radio Information, Inc. v. Herbst*, 876 F.Supp. 523, 525 (S.D.N.Y.1995). Under this test, a corporation's principal place of business is the location in which the corporation has its most extensive contacts with, or its greatest impact on, the general public. *R.G. Barry Corp.*, 612 F.2d at 655. Where, as here, a corporation does not sell a service or product, the "nerve center" test may be the more accurate test to determine the location of the corporation's principal place of business. *Danbury Bowlarama Corp. v. RCA Corp.*, 414 F.Supp. 354, 357 (S.D.N.Y.1976).

## B. *Analysis*

 As Eugenia does not sell services or products, I apply the "nerve center" test. Based on the current record, I conclude that Eugenia's principal place of

business is the Cayman Islands, for the following reasons:

First, Eugenia's "nerve center" is in the Cayman Islands. Its board of directors meets there and its books and records are maintained there. It has bank accounts and investments there. It appears to be controlled, at least in part, by Bessemer Trust Cayman—Bessemer Trust Cayman controls Eugenia's bank accounts, and certain Bessemer Trust Cayman officers are directors of Eugenia—and Bessemer Trust Cayman appears to be located in the Cayman Islands. (Le Sueur Decl. ¶ 7; Chabra Affirm. ¶ 8). Le Sueur, a director of Eugenia with personal knowledge, attests to these facts under penalty of perjury and swears that Eugenia's principal place of business is indeed the Cayman Islands.

Second, defendants have offered little to contradict Eugenia's sworn assertions. Even assuming all of defendants' dealings with Eugenia and all negotiations relating to the Agreement took place in New York, that does not mean that Eugenia's principal place of business is here. Obviously, an entity can do business in New York and still have its principal place of business elsewhere. The Agreement is not Eugenia's only investment.

Third, although it is true that Le Sueur's declaration is ambiguously worded in some respects—the references to assets in "North America," for example, carefully avoid revealing whether the assets are in New York—defendants' speculation and surmise are not enough. At this juncture, all ambiguities must be construed and all reasonable inferences must be drawn in Eugenia's favor. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638

---

**5.** This Court has held that § 1332(c) applies to foreign corporations, *i.e.*, corporations incorporated abroad. *See Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC*, 75

F.Supp.2d 279, 281 (S.D.N.Y.1999); *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 758 F.Supp. 896, 898 (S.D.N.Y.1991).

(2d Cir.2005) (citations omitted). Although the record is sparse, it is sufficient, and I hold that Eugenia's principal place of business is the Cayman Islands. Therefore, there is complete diversity of citizenship between plaintiff and all defendants in these lawsuits.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss for lack of subject matter jurisdiction are hereby denied, without prejudice to renewal following the completion of discovery if defendants believe, in good faith, that discovery shows that Eugenia's principal place of business is actually New York.

SO ORDERED.