In the Matter of the Arbitration between
NEW YORK SHIPPING ASSOCIA-
TION, Inc., etc., et al., Petitioners,

v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL–CIO, et al.,
Respondents-Removants.

No. 67–Civ. 4109.

United States District Court
S. D. New York.

Oct. 27, 1967.

Lorenz, Finn & Giardino, New York City, C. P. Lambos, New York City, of counsel, for petitioners.

Schulman, Abarbanel & Kroner, New York City, Bertram Perkel, New York City, of counsel, for respondents-removants.

## MEMORANDUM DECISION

CROAKE, District Judge.

This Motion to Remand presents the difficult and much-discussed question of whether a federal district court, although powerless to grant the requested relief, nevertheless has "original jurisdiction" within the meaning of the removal statute [1] over an action for a labor injunction originally brought in state court.

## BACKGROUND

Early in the morning on October 19, 1967, picket lines were established at almost every pier on the Brooklyn waterfront by members of the Shoreside Supervisors Union ("SSU"). The Union seeks recognition as the representative of supervisory personnel [2] employed by the stevedoring companies who serve the piers now being picketed.

Longshoremen reporting for work on the morning of the 19th refused to cross these picket lines. Thereafter, on the same day, pursuant to the grievance and arbitration procedures contained in the collective bargaining agreement between the New York Shipping Association, Inc. ("NYSA"), and the International Longshoremen's Association, AFL–CIO ("ILA"), a meeting of the Joint Labor Relations Committee was called. This committee is composed of five representatives each from labor and management and is presided over by the Port Arbitrator. It was determined by a majority vote of the committee [3] that the refusal of the longshoremen to report for work violated the "no strike" provision [4] of the agreement and the committee adopted a "Decision and Order" stating: "(1) The work stoppages violate the labor agreement, and (2) All men are directed to return to work immediately."

When the longshoremen disregarded the back to work order and continued to honor the picket lines of the "SSU," "NYSA" applied to Hon. Dₐrwin W. Telesford, Supreme Court Justice in and for New York County, for a Temporary Restraining Order enjoining further picketing and an Order to Show Cause why the striking unions should not be permanently enjoined. Justice Telesford denied the Temporary Restraining Order but granted an Order to Show Cause, making it returnable on Monday, October 23, the next business day.

At the October 23 hearing, counsel for the removing parties herein [5] served papers indicating that the action had been removed to this court pursuant to 28 U.S.C.A. § 1441. "NYSA" then brought on the instant Motion to Remand by Order to Show Cause dated October 23, 1967 and returnable the following day.

1. 28 U.S.C. § 1441; 62 Stat. 937 (1948).

2. The supervisory personnel in question are primarily ex-longshoremen. They occupy a difficult buffer area between labor and management. While clearly not true management personnel by background or inclination, they must resign union membership while remaining affiliated with the union for limited purposes, such as pension and insurance plans.

3. All five management votes were cast in favor of the resolution condemning the work stoppage and ordering the men back to work. Four of the remaining five votes were cast against it. The fifth labor representative, affiliated with ILA President Thomas W. Gleason, abstained, thereby creating the five to four majority.

4. Paragraph III of the collective bargaining agreement provides in pertinent part: " * * * there shall be no strikes or work stoppages by the employees. The right of employees not to cross a bona fide picket line is recognized by the employers."

5. The petitioners in the action in this court are "ILA" Locals 1814, 958, 1171, and 1277. Locals 1 and 955 did not join in the petition for removal.

## PARTIES JOINING IN THE REMOVAL

■ Section 1441(a) provides that when the other necessary criteria are met, a civil action can be removed by "the defendant or the defendants." 28 U.S.C. § 1441(a); Cf. 28 U.S.C. § 1446. "NYSA" argues that because only four of the six "ILA" locals named as respondents [6] in the original state action joined in the petition for removal,[7] the removal was improper. This is indeed the general rule. See 1 Moore Federal Practice ¶ 0. 168 [3–2]. The rule has its exceptions, however, and among them is the principle that if joinder is "fraudulent," a federal court is free to realign the parties according to their true interests. See Broidy v. State Mut. Life Assur. Co., 186 F.2d 490, 492 (2d Cir. 1951). Fraudulent joinder is a term of art relating to the removal problem primarily as it arises in diversity situations. The most common example is the joinder by plaintiff, a citizen of the forum, of a non-resident true defendant with a resident fraudulent defendant, thereby destroying diversity and precluding removal. "Whether joinder is fraudulent or not is said to depend on whether the plaintiff really intended to obtain a judgment against both defendants." 1 Moore Federal Practice ¶ 0. 161 [2]; Bolstad v. Central Surety and Insurance Corp., 168 F.2d 927 (8th Cir. 1948).

■ In the instant case, Locals 1 and 955, the two locals not joining the removal petition, are aligned in interest with the petitioner "NYSA." Both locals are under the leadership of Thomas W. Gleason with whom the four petitioning locals, under the leadership of Anthony Scotto, are at odds. Immediately after the meeting of the Joint Committee, Mr. Gleason sent a telegram to "All Officers and Locals of the International Longshoremen's Union in the Port of New York," directing the men to cross the picket lines and return to work.[8] To allow the two non-petitioning locals to defeat this removal by not joining in the petition would invite the development of a new species of fraudulent joinder designed to thwart removal in § 301 cases.

## ORIGINAL JURISDICTION

■ In addition to requiring participation by all defendants, to be removable a case must involve a cause of action of which the district courts have "original jurisdiction." 28 U.S.C. § 1441. Recent Supreme Court decisions have accentuated an anomalous discrepancy between federal and state law in the labor field and have thereby rendered the definition of "original jurisdiction" in certain contexts a magician's task.

---

6. "ILA" itself was also named as a respondent in the original state action but was never served. Even if it had been served, the same considerations with respect to alignment of parties apply as well to the International as to Locals 1 and 955.

7. See note 5, supra.

8. "The International executive officers have met concerning the picket line of Shoreside Supervisors Union. Hiring foremen and superintendents have traditionally come from the ranks of the International Longshoremen's Association. Our collective agreement contains specific provisions on the selection of hiring foremen. They are covered under our pension, welfare and clinic programs. The I.L.A. therefore opposes the organization of waterfront supervisors by the Shoreside Supervisors Union. Any such move is contrary to the interests of the ILA and its members.

"On behalf of the International Longshoremen's Association we direct all I.L.A. officers and locals not to support that picket line, not to support the Shoreside Supervisors Union organizing campaign, and to use all their efforts to keep International Longshoremen's Association members at work. Fraternally yours. Thomas W. Gleason, President International Longshoremen's Assn."

While it is true that some members of Locals 1 and 955 were honoring the picket lines notwithstanding Mr. Gleason's instructions to the contrary, for purposes of determining the interests of the local as a legal entity, the court must rely on the avowed position of its de facto leadership.

When Congress passed the Norris-LaGuardia Act [9] in 1932, it chose to couch its ban on labor injunctions in jurisdictional terms directed only to federal courts. Fifteen years later, without modification of Norris-LaGuardia, Congress passed the Labor Management Relations (Taft-Hartley) Act,[10] § 301 of which provides in pertinent part:

> "Suits for violation of contracts between an employer and a labor organization representing employees * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185.

Several of the early questions concerning these two statutes and their relationship to one another are now settled. First, in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the Supreme Court held that § 301 was more than a mere jurisdictional grant; it was a broad Congressional mandate for the courts to fashion a body of substantive law governing the enforcement of collective bargaining agreements.

In Charles Dowd Box Co., Inc. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), it was established that state courts were to exercise concurrent jurisdiction in shaping the new law. This created some doubt as to just what the source of law should ultimately be, but this was resolved in favor of a uniform federal substantive law in Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

In Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Court squarely faced the problem of the conflict between § 7 of Norris-LaGuardia and § 301 of Taft-Hartley, deciding that the latter "did not repeal" the former, and the federal courts remained powerless to use the injunction as a remedy in contract enforcement procedures brought under § 301.

Only one factor remains to sketch the background for the present problem. This is the theory, as yet unpassed upon by the Supreme Court, most thoroughly delineated by Justice Traynor in McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322 (1957), that although the substantive rights of the parties are to be determined by federal law, a state court is not bound by the jurisdictional limits set forth in Norris-LaGuardia and hence is free to employ whatever remedies are appropriate, including injunctions.

Thus, the dilemma. Because the substantive law to be applied under § 301 is federal law, the case will necessarily be one "arising under" the laws of the United States. In the application of such law a federal court would seem to have "original jurisdiction" almost by definition, and § 1441 would therefore appear on its face to allow removal as of right. On the other hand, if removal is granted, the federal court lacks jurisdiction to grant the relief asked and must entertain a motion to dismiss.

If the foregoing discussion is accurate, there seems little doubt that the present suit "arises under" the laws of the United States within the meaning of § 1441 and that if this court has "original jurisdiction," the case is properly removable as of right. There are two basic theories of what "original jurisdiction" means in this context. One holds that jurisdiction means only the capacity to entertain a suit and the other that it must encompass the power to render a binding decision as well. As one commentator has observed, "On this question the authorities are in hopeless conflict."[11] The district court cases are

9. 29 U.S.C. § 101 et seq.; 47 Stat. 70 (1932).

10. 29 U.S.C. § 141 et seq.; 61 Stat. 136 (1947).

11. Moscowitz, "Enforcement of No-Strike Clauses by Injunction," 46 B.U.L.Rev. 343, 356. The article contains a careful and up to date review of the cases and arguments.

split fifty-fifty, with evidence of a post-*Sinclair* trend toward allowing removal.[12] Of the only two appellate courts to deal with the question, the second (which allowed removal), Avco Corp. v. Aero Lodge No. 735, 376 F.2d 337 (6th Cir. 1967), expressly declined to follow the first (which denied it), American Dredging Co. v. Local 25, 338 F.2d 837 (3d Cir. 1964). The Supreme Court explicitly reserved the question for future decision in *Charles Dowd Box*,[13] saw fit not to review it in *American Dredging*,[14] and now has it on certiorari in *Avco*.[15] Ordinarily, the better part of valor might be to await the Court's decision in *Avco*, but that course seems inadvisable in view of the urgency of the present proceedings.[16]

 In reaching its own operational definition of "original jurisdiction," this court distinguishes those cases in which an injunction is only one of two or more alternative remedies sought by the pleadings. Cf. Merchants Refrigerating Co. v. Warehouse Union, 213 F.Supp. 177 (N.D.Cal.1963). In such cases a federal court has power both to determine the rights of the parties and to grant relief that the complaining party views as adequate. In the instant case, however, the complaining party by its pleadings indicates that the only acceptable relief is an injunction. In addition, there exists a court of competent jurisdiction perhaps empowered to grant it.[17] Under such circumstances, this court sees no purpose to be served by a removal that achieves, through the metaphysics of federalism, jurisdiction and non-jurisdiction at the same instant.

The basic pleading in this action demands that respondents show cause why they should not be enjoined. That is the question posed by the lawsuit. For a court that is powerless to issue the injunction prayed for to assert "jurisdiction" over this question is anomalous. The assertion of such jurisdiction rests on the fiction, small solace to the complaining litigant, that the court has jurisdiction to determine the "rights" of the parties and merely lacks the special and somehow different "jurisdiction" to do anything to vindicate those rights. When there exists an equally competent tribunal that can do both, foreclosing the parties from settling their differences before that tribunal seems senseless.

The argument that the anti-injunction policy of Norris-LaGuardia requires the removal-dismissal result is not persuasive. First, there has been ample opportunity for both Congress and the Supreme Court to so state if this were the fact. Second, it is settled beyond doubt that federal law and the policies underlying it are to be applied no matter what tribunal hears the case. Nothing indicates that our brethren on the state bench are any less cognizant of the policies underlying the Norris-LaGuardia Act or any less willing to be governed by them in reaching a decision.

In accordance with the foregoing, this case is remanded to Special Term, Part II of the Supreme Court of the State of New York, New York County, for such further proceedings as are appropriate.

So ordered.

12. Compare, e. g., Publishers' Ass'n of New York City v. New York Newspaper Printing Pressmen's Union, 246 F.Supp. 293 (S.D.N.Y.1965), Levet, J., removal granted, with Merchants Refrigerating Co. v. Warehouse Union, 213 F.Supp. 177 (N.D.Cal.1963, Weigel, J., removal denied). See also Moscowitz, n. 11 supra, at nn. 77–79.

13. 368 U.S. 502, 514 n. 8, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

14. Cert. denied, 380 U.S. 935, 85 S.Ct. 941, 13 L.Ed.2d 822 (1965).

15. Cert. granted, 389 U.S. 819, 88 S.Ct. 103, 19 L.Ed.2d 68.

16. Stevedoring operations are still at a standstill on the Brooklyn piers.

17. This court takes no position on whether an injunction is an available remedy under New York law and certainly does not presume to express an opinion on the question of whether, on the merits, it should issue if available.