Steve **POWERS**, Plaintiff,

v.

**FOX TELEVISION STATIONS, INC., Defendant.**

No. 94 Civ. 6246 (SAS).

United States District Court,
S.D. New York.

Nov. 22, 1995.

Louis G. Santangelo, Sapir & Frumkin LLP, White Plains, New York, for plaintiff Steve Powers.

Clifford Thau, Squadron, Ellenoff, Plesent & Sheinfeld, LLP, New York City, for defendant Fox Television Stations, Inc.

*Opinion & Order*

SCHEINDLIN, District Judge.

Plaintiff filed the instant action in New York state court on August 15, 1994, alleging that Defendant terminated his employment in violation of the New York State Human Rights Law and New York City Administrative Code. *See* N.Y.Executive Law § 296(1)(a); N.Y.C.Admin.Code § 8–502(c). On August 30, 1994, Defendant removed the case to this Court based on its diversity jurisdiction. Plaintiff now moves to remand to state court, maintaining that diversity is lacking. For the reasons set forth below, Plaintiff's motion is denied.

Plaintiff Steve Powers is a resident of Putnam Valley, New York. Defendant Fox Television is a corporation organized under the laws of Delaware, with its corporate offices located in California. Despite the fact that Fox Television's corporate offices are in California, Plaintiff maintains that it is actually a New York citizen. Essentially, Plaintiff contends that because Fox Television is a subsidiary of, and controlled by, New York parent companies, New York should be its imputed location for jurisdictional purposes.

### A. Burden of Proof

■ For the purpose of establishing diversity jurisdiction, a corporation is deemed to be a citizen of the state in which it is incorporated and in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). Typically, the party seeking to invoke federal diversity jurisdiction bears the burden of showing that jurisdiction is proper, even on a motion to remand. *See R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979).

■ However, the case at hand presents an unusual situation. Plaintiff, borrowing a concept most often used in cases where a party seeks to "pierce the corporate veil," argues that Defendant is merely the "alter ego" of its parent corporations. As such, Plaintiff argues that New York, where the parents are located, is Defendant's actual principal place of business.[1]

---

1. At times, Plaintiff has argued that New York should be considered an *additional* principal place of business for Defendant. This argument "ignores the plain meaning of the concept of a

■ Plaintiff correctly notes that courts have applied the "alter ego" analysis to determine the citizenship of related companies for diversity purposes. *See, e.g., United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686 (5th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *In re Air Disaster Near Cove Neck, N.Y.,* 774 F.Supp. 718 (E.D.N.Y.1991). Nonetheless, by arguing that Defendant is merely the alter ego of its parents, Plaintiff is asking the Court to depart from the general rule "that a 'subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business.'" *Topp v. CompAir, Inc.,* 814 F.2d 830 (1st Cir.1987) (quoting 1 Moore's Federal Practice ¶ 0.77[1.–2], at 717.10 (2d ed. 1986)).

Because Plaintiff asks the Court to depart from this general rule, it seems reasonable to require Plaintiff to demonstrate that a departure is warranted. It would be fundamentally unfair to require Defendant to affirmatively demonstrate that it is more than a mere pawn of its parent corporations. Requiring Defendant to do this would deny it the benefit of the presumption articulated in *Topp.*

■ Accordingly, although the ultimate burden of establishing the Court's jurisdiction remains with Defendant, Plaintiff must sustain the burden of proving that Defendant is a mere "alter ego" of its parents. Hence, Defendant will have the initial burden of making a *prima facie* showing that its principal place of business is California. If Defendant demonstrates this, Plaintiff will bear the burden of producing facts sufficient to support its assertion that Defendant is merely an "alter ego" of its New York parents.[2] Only if Plaintiff meets this burden of production will the ultimate burden of persuasion return to Defendant.

### B. *The Nerve Center Test*

■ The appropriate test for determining the principal place of business of a corporation with operations spread over numerous states is the "nerve center test." *See R.G. Barry Corp.,* 612 F.2d at 655; *Kubin v. Miller,* 801 F.Supp. 1101, 1112 (S.D.N.Y. 1992); *Petroleum & Energy Intelligence Weekly, Inc. v. Liscom,* 762 F.Supp. 530, 534–35 (S.D.N.Y.1989). This test seeks to locate "the nerve center from which [the corporation] radiates out to its constituent parts and from which [the corporation's] officers direct, control and coordinate all activities." *Kubin,* 801 F.Supp. at 1112 (quoting *Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862, 865 (S.D.N.Y.1959)).

■ Defendant has sufficiently demonstrated that its "nerve center" is California, where its corporate offices are located. The overwhelming majority of Defendant's officers and directors are in California, including its chairman, president, chief operating officer, secretary, treasurer and all of its executive vice presidents. *See* Affidavit of Attorney Donald L. Sapir, dated November 1, 1994 ("Sapir Aff."), Ex. 10, Interrogatory No. 6. This is an important consideration in determining a corporation's "nerve center." *See, e.g., Kubin,* 801 F.Supp. at 1112 (finding "nerve center" where executive officers worked full time).

More importantly, all of Defendant's major operational decisions are made in California. From its corporate headquarters, Defendant formulates policies and provides direction for all of its television stations. *See* Affidavit of Corporate Secretary Jay Itzkowitz, dated November 18, 1994 ("Itzkowitz Aff."), at ¶ 9. These are additional factors supporting a finding that California is truly Defendant's "nerve center." *See Egan v. American Air-*

*principal* place of business and is at odds with the overwhelming consensus of authority that a corporation may have only one principal place of business." *Bailey v. Grand Trunk Lines New England,* 805 F.2d 1097, 1100 (2d Cir.1986), *cert. denied,* 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987).

**2.** At least one case in this circuit suggests that, in the veil piercing context, proof that a corporation

is an "alter ego" must be made by "clear and convincing evidence." *See International Controls and Measurements Corp. v. Watsco, Inc.,* 853 F.Supp. 585, 591 (N.D.N.Y.1994) (declining to pierce the corporate veil absent such a showing). However, in the context of this motion, where Plaintiff has the burden of production, he need only prove that Defendant is an "alter ego" by a preponderance of the evidence.

*lines, Inc.,* 211 F.Supp. 292, 295 (S.D.N.Y. 1962), *aff'd,* 324 F.2d 565 (2d Cir.1963) (principal place of business is where company's "general overall management and business policy is prescribed"); *Scot Typewriter Co.,* 170 F.Supp. at 865 (principal place of business was state in which corporate officers directed and controlled various facets of the business).

Other facts also point to the conclusion that Defendant's principal place of business is California. Although Defendant operates nationwide, thirty-three percent (33%) of its employees work in California, which is far more than work in any other state. *See* Sapir Aff., Ex. 10, Interrogatory No. 2. Additionally, Defendant leases three times as much space in California as it does in New York. *See* Itzkowitz Aff. at ¶ 7. Finally, Defendant's payroll account and accounts payable are maintained at the Bank of America in California. *See* Sapir Aff., Ex. 10, Interrogatory No. 3.

In short, Defendant has carried its initial burden of demonstrating that California is its principal place of business for purposes of diversity jurisdiction.[3] The burden now switches to Plaintiff to produce evidence sufficient to support a finding that Defendant is merely the "alter ego" of its New York parents.

### C. *Alter Ego Analysis*

▮ As noted, a separately incorporated entity is generally considered to have its own principal place of business. This will be true even where "the parent corporation exerts a high degree of control through ownership or otherwise." *Topp,* 814 F.2d at 835. However, in limited circumstances, where the parent exercises "sufficient control" over the subsidiary, courts will disregard the corporate distinctions and impute the parent's principal place of business to the subsidiary.

*See generally In re Air Disaster,* 774 F.Supp. at 725.

Plaintiff argues that Defendant's parent corporations so dominate the "ownership and operation" of its television stations that Defendant may be considered merely their "alter ego." In support of his argument that Defendant's parents control the *ownership* of the television stations, Plaintiff makes two claims. First, he asserts that a number of directors of Defendant's parent The News Corporation Limited ("NewsCorp."), which Plaintiff alleges is a New York entity, have previously testified that their company owns Defendant. *See* Affidavit of Attorney Louis G. Santangelo, dated July 14, 1995 ("Santangelo Aff."), at ¶¶ 25–35. Second, he contends that Defendant did not pay for the television stations it owns, but instead "received its funding and financing from the New York-based parent corporations." Pl.'s Reply Mem. at 7–8; *see also* Santangelo Aff. at ¶ 43.

Plaintiff also makes several claims in support of his argument that the New York parents control the *operation* of Defendant's television stations. In addition to asserting that the parent companies financed the Defendant's purchase of the stations, Plaintiff claims that the parents pay the salaries of many of Defendant's officers and directors. *See* Santangelo Aff. at ¶ 44. He also points out that Defendant and its parents have a number of officers and directors in common, and share a variety of corporate services. Finally, he claims that Defendant's parents have guaranteed some of its contracts, and made debt service payments on its behalf since 1986. *See id.* at ¶ 49.

▮ In evaluating Plaintiff's claim, a number of factors are relevant in determining whether a subsidiary is merely the "alter ego" of its parents. These include:

(1) the absence of the formalities and paraphernalia that are part and parcel of the

---

3. Many courts now use the "total activity" test to determine a corporation's principal place of business. *See, e.g., Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1093–94 (9th Cir. 1990); *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980). This test seeks to determine the state in which the most corporate activity occurs. Important considerations include where employees, offices and production facilities are located, and where management decisions are made. *See Industrial Tectonics,* 912 F.2d at 1094; *Toms,* 610 F.2d at 315–16. Under this test, as under the "nerve center" test, Defendant's principal place of business is California.

corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991).

An examination of these factors indicates that Plaintiff has not proven that Defendant is the "alter ego" of its parents. Plaintiff has only shown that three of the ten factors articulated in *Passalacqua* weigh in favor of his claim. He has demonstrated only that Defendant and its parents do not always deal with each other at arms length, that Defendant and its parents have some common directors, and that Defendant's parents have guaranteed some of its debts. *See* Santangelo Aff. at ¶¶ 45, 49. This is not enough to establish that Defendant is the "alter ego" of its parents.

Plaintiff is not required to show that all ten of the *Passalacqua* factors weigh in favor of his claim. Nonetheless, Plaintiff's failure to establish seven of them is telling. Plaintiff has not demonstrated the absence of corporate formalities. He has not shown that Defendant is inadequately capitalized, nor that its corporate funds are being put to personal use. He has also failed to produce any evidence that Defendant lacks business discretion over its own affairs, or that its parents have used its property as their own.[4]

Plaintiff has failed to rebut the presumption that Defendant has its own principal place of business in California.[5] Defendant is separately incorporated, keeps separate accounting and tax records, and has its own facilities and operational personnel. *See* Itzkowitz Aff. at ¶ 9. Although there is some membership overlap, Defendant has a separate board of directors from its parents, and maintains its own financial records, corporate minute books and bank accounts. *See id.*

Plaintiff has failed to show by a preponderance of the evidence that Defendant is a mere "alter ego" of its parent corporations. As a result, Defendant has sustained its burden of establishing that this Court has jurisdiction, based on diversity of citizenship, over the instant dispute. Accordingly, Plaintiff's motion to remand is denied.

SO ORDERED.

**4.** Moreover, a number of the allegations Plaintiff makes are dubious. For example, Plaintiff contends that NewsCorp. owns Defendant. Yet, at oral argument, defense counsel stated that Rupert Murdoch, NewsCorp.'s Chief Executive Officer, personally holds more than three quarters of Defendant's equity. Transcript of Oral Argument, July 25, 1995 ("Tr."), at 18. While Plaintiff has also argued that Mr. Murdoch dominates Defendant's affairs through the New York parent companies, *see* Pl.'s Reply Mem. at 13 (citing Santangelo Aff. at ¶¶ 27, 36, 39), he has failed to substantiate this allegation.

Plaintiff's assertion that NewsCorp. is a New York entity is also questionable. As Defendant has noted, NewsCorp. is a corporation organized under Australian law. *See* Tr. at 17. According-

ly, NewsCorp. will only be considered a New York corporation if its principal place of business is New York. Plaintiff has failed to demonstrate that this is the case.

**5.** Plaintiff alleges that Defendant has refused to comply with discovery orders, and that this accounts for his limited showing. To compensate for this alleged misconduct, Plaintiff asks the Court to draw inferences in his favor on a number of factual issues. The discovery process was closely supervised both by this Court and a Magistrate Judge of this Court. There is no proof that Defendant abused the discovery process. Therefore, no negative inferences can or will be drawn.