Remy RAPHAEL, Plaintiff,

v.

**18 RESTAURANT, INC. d/b/a Dunkin Donuts, National Restaurant Management, Inc. d/b/a Dunkin Donuts, Dunkin Donuts Inc., and Hobart Corporation, Defendants.**

**HOBART CORPORATION, Third–Party Plaintiff,**

v.

**18 RESTAURANT, INC. d/b/a Dunkin Donuts, National Restaurant Management, Inc. d/b/a The Riese Operation, d/b/a Dunkin Donuts, Dunkin Donuts Inc., Third–Party Defendants.**

No. 95–CV–4228 (JRB).

United States District Court,
E.D. New York.

June 17, 1996.

**550**

Christopher J. Smith, Davis & Smith, New York City, for Raphael.

Saul Wilensky, Lester Schwab Katz & Dwyer, New York City, for Hobart Corp.

Brian McCaffrey, Law Offices of Michael J. Ross, Esq., New York City, for 18 Restaurant, Inc.

Bruce A. Lawrence, Law Offices of Bruce A. Lawrence, Brooklyn, NY, for National Restaurants Management, Inc.

*DECISION–MEMORANDUM*
*AND ORDER*

BARTELS, District Judge.

Plaintiff Remy Raphael ("Raphael") filed the instant action in New York State Supreme Court, Kings County, on September 26, 1995, alleging that he sustained personal injuries due in part to the negligence of Defendants 18 Restaurant, Inc. ("18 Restaurant"), National Restaurant Management, Inc. ("National Restaurant"), and Dunkin Donuts Incorporated ("Dunkin Donuts") (collectively "employer-defendants"), and in part to a defective product manufactured by Defendant Hobart Corporation ("Hobart"). On October 17, 1995, Hobart removed the case to this Court based on diversity jurisdiction. Raphael now moves to remand to state court, maintaining that removal was improper and diversity is lacking. For the reasons set forth below, Raphael's motion is granted.

## DISCUSSION

The central issue before the Court is whether diversity jurisdiction exists and the matter therefore is properly before it, or on the other hand, whether diversity is lacking and the case must be remanded to state court. In order to resolve this issue, the Court must first determine when removal based upon diversity is possible. Second, if complete diversity is not present, the Court must determine whether federal jurisdiction is still proper under the principle of "fraudulent joinder", whereby parties which would otherwise defeat diversity do not, because the non-diverse parties are found to be nominal or sham parties. To determine whether parties are fraudulently joined, the Court must determine whether or not there is a viable theory under which Raphael may recover against the parties alleged to be fraudulently joined.

*Jurisdictional Standard*

A defendant may remove a case under 28 U.S.C. § 1441(a) from state to federal court if the federal district court has original jurisdiction. As Hobart here alleges diversity jurisdiction under 28 U.S.C. § 1332(a)(1) as the source of original jurisdiction, the amount in controversy must exceed $50,000 [1] and the

---

**1.** As Raphael alleges damages in excess of the jurisdictional minimum and Defendants do not

contest the amount, the Court will consider

parties must be citizens of different states. Removal is limited under 28 U.S.C. § 1441(b) to situations in which no defendant is a citizen of the forum state. Although generally all defendants must join the petition for removal, *Fletcher v. Hamlet*, 116 U.S. 408, 410, 6 S.Ct. 426, 426–27, 29 L.Ed. 679; *Bradford v. Harding*, 284 F.2d 307, 309 (2d Cir.1960); *Rosendale v. Citibank, N.A.*, Dkt. 94 Civ. 8591, 1995 WL 329296, at *2 (S.D.N.Y. June 1, 1995), nominal defendants need not consent to removal, *Avon Prods., Inc. v. A/J Partnership*, No. 89 Civ. 3743, 8032, 1990 WL 422416, at *2 (S.D.N.Y. Mar. 1, 1990), and will not defeat diversity jurisdiction, *WMW Machinery Co. v. Koerber A.G.*, 879 F.Supp. 16, 17 (S.D.N.Y.1995). The party seeking removal squarely bears the burden of proving jurisdiction by competent proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979).

### Defeating Diversity

In cases where there are multiple parties, complete diversity is necessary, *Israel v. Carpenter*, No. 95 Civ. 2703, 1995 WL 640534, at *2 (S.D.N.Y. Oct. 31, 1995), although as noted above, citizenship of nominal parties is not considered. *Pepsico v. Wendy's Int'l*, 118 F.R.D. 38, 45 (S.D.N.Y.1987).

■ To determine whether a defendant is merely nominal or fraudulently joined and thus will not defeat diversity despite being a resident defendant, the inquiry focuses on whether the plaintiff truly intended to obtain a judgment against that defendant. *New York Shipping Ass'n v. Int'l Longshoremen's Ass'n*, 276 F.Supp. 51, 53 (S.D.N.Y.1967) (citing 1 Moore's Federal Practice ¶ 0.161[2]); *see, Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir.1994). A defendant is clearly nominal if the plaintiff fails to state a cause of action against the resident defendant and the failure is obvious according to the settled rules of the state. *American Mutual Services*

amount in controversy requirement as satisfied

*Corp. v. U.S. Liability Ins. Co.*, 293 F.Supp. 1082, 1084 (E.D.N.Y.1968). Conversely, however, if there is a real possibility that the plaintiff has stated a cause of action, then the defendant is not nominal, and the case should be remanded. *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 277 F.Supp. 731, 733–34 (E.D.N.Y.1967). The movant bears a heavy burden of persuasion to show that a party is nominal. *McKay v. Point Shipping Corp.*, 587 F.Supp. 41, 42–43 (S.D.N.Y.1984); *Ford*, 32 F.3d at 935; *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981).

### Corporate Citizenship

In order to find whether diversity jurisdiction is present, the citizenship of each party must be determined. A corporation finds itself a citizen of "any state by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also, Wm. Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 141 (2d Cir.1991); *In re Joint Eastern and Southern Districts Asbestos Litigation*, No. 87–CV–0537, 1990 WL 129194, at *2 (E. & S.D.N.Y. Aug. 30, 1990).

■ The principal place of business of a corporation is determined by one of two multi-factored judicial tests, the "nerve center test" or the "place of the activities/public impact test", depending upon whether the corporation's operations are spread across numerous states or centralized in a more local area. *R.G. Barry Corp.*, 612 F.2d at 654–55; *In re Asbestos Litigation* at *2–3; *Powers v. Fox Television Stations*, 907 F.Supp. 719, 721–22 (S.D.N.Y.1995).

### Citizenship of the Parties

### A. Raphael

Mr. Raphael's citizenship is not in dispute. He is an individual who lives in Kings County, New York and thus is a citizen of New York for diversity purposes. 28 U.S.C. § 1332(a)(1).

for the purposes of this motion.

## B. National Restaurant, Dunkin Donuts and Hobart

Very little evidence has been put forth regarding the citizenship of the above corporate defendants, although the parties seem only to dispute the citizenship of Hobart at this time.

In its papers accompanying the motion to remand, Raphael relies upon three documents bearing the letterhead of the New York Department of State to establish the citizenship of National Restaurant, Dunkin Donuts and Hobart. Each of these one page letters contains similar language, namely:

> NATIONAL RESTAURANTS, INC. a DELAWARE corporation received authority to do business in New York State on 03/08/1962. Its principal location is NEW YORK County. (Motion to Remand, Ex. E).

Only the names of the corporations and the date authority to do business was granted vary. All three letters state that Delaware is the place of incorporation for each corporation and that the "principal location is NEW YORK County." Raphael offers this evidence as proof that the three corporations' principal place of business is New York, and that diversity is thus destroyed, mandating remand.

■ The Court finds this logic unpersuasive. Although a corporation's state of incorporation is subject to easy definition and therefore registration with the Department of State, the determination of the principal place of business results from the application of one of two multi-factored judicial tests. From the context of the letters, it is clear that the notation of New York County as each of the three corporations' "principal location" is meant only to indicate where, *in New York*, the corporations may be found.

This conclusion is furthered by the fact that all of the letters include a "service of process address" in New York County, and that two of the letters include a "registered agent address" there as well. Thus, although the letters indicate the state of incorporation for National Restaurant, Dunkin Donuts and Hobart as Delaware, the Court does not have sufficient information before it to determine the principal place of business of each defendant at this time. To determine this question would normally require a hearing. In this case, however, because 18 Restaurant's citizenship defeats diversity singlehandedly, as will be discussed below, a hearing is not necessary to determine the complete citizenship of every party.[2]

## C. 18 Restaurant

■ Although Raphael did not submit the Secretary of State's letter regarding 18 Restaurant, he does attach 18 Restaurant's certificate of incorporation which indisputably shows that it is incorporated pursuant to New York law. Thus, regardless of its principal place of business, it is a citizen of New York for diversity purposes and complete diversity between Raphael and the defendants is lacking because Raphael is also a New York citizen. Therefore, the Court must decide whether 18 Restaurant is a nominal defendant and has been fraudulently joined in the action and thus its citizenship should be disregarded for the purposes of deciding the remand motion.

### Fraudulent Joinder

As noted above, a removal petition must be joined by all defendants unless some of those defendants are nominal parties, named only to defeat diversity, in which case those defendants will prevent neither removal nor diver-

2. Interestingly, Hobart never disputes the assertion that National Restaurant's principal place of business is New York.

Furthermore, although the parties raise no contention about Dunkin Donut's principle place of business being in New York, at least one federal court has found its principal place of business to be Massachusetts. *Dunkin' Donuts Inc. v. Mercantile Ventures*, No. EP–91–CA–154–B, 1992 WL 156566, at *1 (W.D.Tex. Jan. 8, 1992) *aff'd in part* 19 F.3d 14 (5th Cir.1994).

Finally, while Raphael summarily states that Hobart's principal place of business is New York, Hobart summarily states that it is Ohio. While sufficient evidence is not before the Court to determine Hobart's principal place of business conclusively, even assuming *arguendo* that it is Ohio, the case, for reasons stated below, would still be remanded. (Clearly, if its principal place of business is New York, as Raphael contends, diversity is instantly destroyed.)

sity jurisdiction. Hobart contends that the employer-defendants have been fraudulently joined and that no recovery is possible against them under state law because Raphael's sole remedy for a work-related injury is workers' compensation and thus recovery against his employer is barred.

■ Raphael alleges that his injuries occurred when working in a Dunkin Donuts restaurant while using a cheese slicing attachment to a machine manufactured by Hobart. He claims that because the slicing attachment was broken or defective, it severed the distal phalanges of his left index and middle fingers. After Raphael instituted suit in state court on September 26, 1995, the state court issued an order to preserve the slicing attachment and machine. On April 7, 1995, the state court issued another order permitting inspection and photography of the machine and slicing attachment. On May 10, 1995 the attorney for 18 Restaurant sent a letter to Raphael's attorney stating that while the machine was available, the slicing attachment had been discarded and that no documents concerning the slicing attachment or machine were available.

Raphael argues that the foregoing facts constitute an additional state tort against the employer-defendants: that of impairing his ability to maintain a product liability action against the manufacturer of equipment responsible for his injury. Hobart strenuously contests this argument and contends that it is an artifice designed to defeat diversity by including nominal parties against whom no recovery is possible. As the removing party, Hobart must prove the fraud it alleges. In other words, Hobart "must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Jernigan v. Ashland Oil,* 989 F.2d 812, 815 (5th Cir.1993) (quoting *B., Inc.,* 663 F.2d 545, 549), *cert. denied* 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150.

In order to warrant remand, there must be some reasonable basis for predicting that state law might impose liability on the non-diverse defendant. If the Court "[c]annot confidently say that the claims against [the non-diverse defendant] are specious under New York law," then remand is appropriate. *American Mutual Liability Co. v. Flintkote Co.,* 565 F.Supp. 843, 846 (S.D.N.Y.1983). *See also, Wise v. Lincoln Logs,* 889 F.Supp. 549, 552 (D.Conn.1995).

Thus, whether Raphael has a viable action in state court is of paramount importance, and therefore a discussion of the cases cited by each party is appropriate.

*State Common–Law Tort Claim*

The New York courts have found a tort to exist where an employer discards evidence malevolently. In *Coley v. Arnot Ogden Memorial Hospital,* 107 A.D.2d 67, 485 N.Y.S.2d 876 (1985), an employer discarded a broken ladder responsible for the plaintiff's injuries. The Appellate Division found that as a general principle:

> [A]n employee can maintain a common-law action against the employer if such a suit is based, not upon the compensable injury itself, but on a different distinct injury resulting from the impairment of the employee's legal rights to workers' compensation benefits.... [W]e are of the view that the exclusivity provisions of the Workers' Compensation Law should not bar a common-law action against the employer for impairing an employee's right to sue a third-party tort-feasor. *Coley,* 485 N.Y.S.2d at 878 (citations omitted).

In *Coley,* however, the court went on to note that in that particular case, it could not identify a duty owed to the defendant, noting that there was no agreement or promise to preserve the broken ladder, and that the record made clear that it had been discarded solely "to ensure the safety of others employed by the defendant," and that malevolence was not the motive. *Coley,* 485 N.Y.S.2d at 878–79.

In *Caban v. Gottlieb Iron Works,* 147 Misc.2d 583, 558 N.Y.S.2d 810 (N.Y.Sup.Ct. 1990) *aff'd,* 172 A.D.2d 377, 568 N.Y.S.2d 758 (1991), an employer failed to disclose the name of a party partly responsible for plaintiffs' injuries. The court noted that in order to set forth a cause of action against the employer, the plaintiffs must establish *inter alia:* that the employer intentionally or neg-

ligently failed to disclose the party's name; that in fact there was an obligation to disclose the name; that plaintiffs were harmed by such failure; and that plaintiffs acted diligently in seeking to learn of the party from the employer or otherwise. *Caban,* 558 N.Y.S.2d at 813.

In essence, *Caban* established that in order for an employee to recover for the independent tort against the employer, the employer must impair the employee's ability to proceed *and* the employer must be under some sort of duty to the plaintiff.

In *Vaughn v. City of New York,* 201 A.D.2d 556, 607 N.Y.S.2d 726 (1994), an employer inspected, then discarded a mat alleged to have been responsible for an employee's injuries. The Appellate Division noted that five months after the injuries, the plaintiff requested by letter that the mat be preserved because he intended to bring a product liability suit against the manufacturer of the mat. When the plaintiff served the discovery notice five months later, it learned that the employer could not find the mat, which in fact was never produced. The court found that the employer could not "conclusively establish that the mat was discarded innocently prior to any notice to the [employer] that the plaintiff intended to file a lawsuit." *Vaughn,* 607 N.Y.S.2d at 728.

*Vaughn* is strikingly similar to the case at bar in which the question of timing will surely prove critical. Although Hobart claims that the disposal was innocent and done prior to any indication that Raphael intended to maintain an action, Hobart does not appear to be in a position to know this fact definitively. Additionally, Raphael attaches an unsworn statement from Karl Voigt, manager of Dunkin Donuts, who indicates that the employer-defendants photographed the slicing attachment before discarding it after Raphael's accident. Voigt further raises the possibility that in fact the slicing attachment never was discarded and remains in storage. (Smith Reply Aff., Ex. H).

In *McAllister v. Renu Indus. Tire Corp.,* 202 A.D.2d 556, 609 N.Y.S.2d 92, 93 (1994), an employer disposed of a split-rim assembly which injured the plaintiff. Because the court found a clear record, including testimo-

ny of the plaintiff himself, that there was never any promise or agreement to preserve the item, as well as the fact that it was discarded innocently prior to any notice that plaintiff intended to file a lawsuit, it affirmed summary judgment in favor of the defendant. *McAllister,* 609 N.Y.S.2d at 92–93.

From these cases derive the simple principle that in order to maintain a tort action against an employer for inhibiting the employee's product liability suit, distinct from a workers' compensation claim, the plaintiff must show both a duty to preserve the evidence in question and notice that the plaintiff intends to bring a product liability suit. The duty can arise through a promise, an agreement, a letter requesting preservation, and certainly, as in the case at bar, a court order directing preservation. Notice can be derived from a letter declaring intent to sue or, as in this case, an actual suit which has been commenced. Thus, Raphael clearly has stated a claim under New York law.

*Additional Contentions*

Finally, in order to bolster its position that Raphael named the other defendants only to defeat diversity and thereby impede removal, Hobart claims that it is the only defendant served with the complaint. While it is unclear why some of the defendants do not answer and why Raphael, in his reply to Hobart's opposition to remand, did not include proof of service earlier, in a subsequent affidavit, he includes proof of service upon the employer-defendants on October 3, 1995, only seven days after the complaint was stamped as received in state court.

As a last matter, it should be noted that because the slicing attachment was discarded, plaintiff cannot be sure whether Hobart was in fact the manufacturer of the slicing attachment. This uncertainty, however, cannot defeat Raphael's ability to bring this claim at this time. Nor can this uncertainty impede Raphael from attempting at trial to either prove that the slicing attachment was Hobart's or that he can recover against the employer-defendants or Hobart.

As Raphael has prevailed, the Court does not address, and thus declines, Hobart's invi-

tation to grant summary judgment *sua sponte.*

## CONCLUSION

As it clearly cannot be said that Raphael has no basis for maintaining this action, Hobart has not sustained its burden of showing that the employer-defendants are merely nominal, fraudulently named defendants. Thus, the presence of even one New York defendant, here 18 Restaurant, destroys diversity. Additionally, even if diversity were not lacking, all defendants were required to join Hobart's removal petition. For the foregoing reasons, Raphael's motion is GRANTED and this case is hereby REMANDED to New York State Supreme Court, Kings County.

The Court finds both parties' request for sanctions unfounded and thus DENIES the cross-motions for sanctions.

**SO ORDERED.**